**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**J.T. HAUN, Defendant–Appellant.**

No. 95–5974.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1996.

Decided July 19, 1996.

Jay I. Bratt (argued), U.S. Dept. of Justice, Kenneth L. Jost (briefed), Deborah S. Smolover, U.S. Dept. of Justice, Office of Consumer Litigation, Washington, DC, for plaintiff–appellee.

Jerry H. Summers (argued and briefed), Summers, McCrea & Wyatt, Chattanooga, TN, J.T. Haun, Federal Correctional Institute, Manchester, KY, for defendant–appellant

Before: KENNEDY and NORRIS, Circuit Judges; MATIA,* District Judge.

KENNEDY, Circuit Judge.

Defendant J.T. Haun appeals his convictions for mail fraud, conspiracy to commit mail fraud, and money laundering. Defendant challenges his money laundering convictions arguing that there was insufficient evidence to support his convictions and that the money laundering statute is unconstitutionally void for vagueness. He also argues that the District Court improperly admitted certain deposition testimony. Finally, with respect to his sentence, defendant challenges the District Court's calculation of his offense level. For the following reasons, we AFFIRM.

## I. Facts

In late 1989, defendant, the operator of Auto World, a Tennessee car dealership, began purchasing automobiles from Ron Germadnik, an Ohio car dealer. Germadnik purchased used Chevrolet Caprices at auctions specializing in wrecked and theft-recovered vehicles. Germadnik separated the cars' bodies from their chassis and replaced the old bodies with new ones. Once rebuilt, the cars looked like new and the odometers reflected low mileages. These cars were titled in Ohio and the "self-assembled" notation on the title's "previous owner" line indicated that the cars had been rebuilt. During 1989 and 1990, Germadnik sold a number of rebuilt Caprices to Auto World. Germadnik told defendant how the Caprices were constructed and provided defendant with true information regarding the chassis' years and mileages.

Defendant and his salesmen Stanford Sharp and Ray Lewis subsequently sold these cars without disclosing to buyers that they were reassembled and that the chassis had mileages far in excess of the body mileages that were reflected on the odometers. Buyers typically paid Auto World a fee to obtain a Tennessee title for them. The Tennessee titles, however, did not bear the "self-assembled" notation so buyers could not learn from the titles that these cars had been rebuilt.

When one buyer wanted to obtain a Tennessee title on his own, defendant instructed Greg Goins, a car buyer for Auto World, to obtain an Ohio title that did not have the "self-assembled" disclosure. Goins then asked Gary Burkeen, a used car wholesaler doing business as Eighty–Eight Fleet, Inc., to "flip" that title for him. To satisfy that request, Goins supplied Burkeen with paperwork that showed that ownership of that vehicle was transferred from Auto World to Eighty–Eight Fleet, Inc. Although that transfer never occurred, the new Ohio title reflected "Auto World" rather than "self-assembled" as the previous owner.

* The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation.

A jury found defendant guilty on five counts of money laundering under 18 U.S.C. § 1956, five counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371.[1]

## II. Discussion

### A. Money Laundering Convictions

#### 1. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence to support his money laundering convictions under 18 U.S.C. § 1956(a)(1)(A)(i) on two bases. He contends that (1) the money laundering statute does not apply in the context of criminal offenses that do not involve narcotics; and (2) the trial evidence did not establish the elements of money laundering. We address each argument in turn.

##### a. Money Laundering Statute's Application to Nondrug-Related Offenses

Defendant's first argument is that the federal money laundering statute under which he was convicted, 18 U.S.C. § 1956(a)(1)(A), was intended to reach money laundering of proceeds of narcotics transactions, not nondrug-related transactions. Because defendant's activities did not involve narcotics, he argues that his convictions under that statute were improper. The District Court rejected defendant's argument based on the clear language of the statute. Reviewing the District Court's decision concerning the question of statutory interpretation de novo, *Nixon v. Kent County,* 76 F.3d 1381, 1386 (6th Cir. 1996) (en banc), we too find defendant's argument to be without merit.

■ Section 1956(a) provides in relevant part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some ·form of unlawful activity, conducts or attempts to conduct such a financial transaction which

in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity

. . .

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

The statute defines "specified unlawful activity" to include "any act or activity constituting an offense listed in section 1961(1) of this title." 18 U.S.C. § 1956(c)(7). Included among the offenses listed in § 1961(1) is mail fraud in violation of 18 U.S.C. § 1341, the statute under which defendant was convicted. Nothing in the plain language of the statute suggests that the mail fraud must have been drug related. Moreover, we have previously upheld the application of § 1956 in the context of nondrug-related offenses without discussion of the issue defendant raises here. *See, e.g., United States v. Smith,* 39 F.3d 119 (6th Cir.1994) (affirming money laundering convictions based on transactions in proceeds of mail and wire fraud that did not involve narcotics). We are satisfied that the plain language of the statute unambiguously makes mail fraud, whether or not related to drug transactions, a specified unlawful activity.

■ In that the statute is unambiguous, only a showing of congressional intent to exclude nondrug-related offenses from the scope of the money laundering statute would justify limiting the applicability of the statute, as defendant suggests, to financial transactions involving proceeds of narcotics trafficking. *See Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984). In surveying the legislative history of § 1956, we find no intent on the part of Congress to limit its scope to only offenses involving drugs. Nor has defendant identified any legislative history that evidences Congress' intent to exclude nondrug-related activity from the statute's purview. In fact, the legislative history reflects that although

---

1. Sharp and Ray Lewis were also indicted, charged, and tried for mail fraud. While Sharp was convicted of conspiracy to commit mail fraud and one count of mail fraud, Ray Lewis was acquitted.

§ 1956 was considered necessary to combat illegal narcotics conspiracies, it was also designed to reach financial transactions involving proceeds of a broad range of criminal activity. *See* 132 CONG. REC. S9938–05, S9985–87 (1986); HOUSE COMM. ON BANKING, HOUSING, AND URBAN AFFAIRS, COMPREHENSIVE MONEY LAUNDERING PREVENTION ACT, H.R. REP. No. 746, 99th Cong., 2d Sess. 16 (1986); *see also* 136 CONG. REC. S9477–02, S9505 (1990); 136 CONG. REC. E3684–02, E3685 (1990).

Because the plain language of the money laundering statute confirms the conclusion that nondrug-related criminal activity may form the basis of a money laundering conviction and nothing in the statute's legislative history reflects Congress' intent to exclude nondrug-related offenses from the statute's scope, we reject defendant's challenge to the statute's application to his conduct.

### b. Sufficiency of the Evidence

■ Next, defendant maintains that the evidence did not support his money laundering convictions under 18 U.S.C. § 1956(a)(1)(A)(i). The standard for a challenge to the sufficiency of the evidence is whether, taking the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Martin,* 920 F.2d 345, 348 (6th Cir.1990) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied,* 500 U.S. 926, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991).

■ Defendant contends that because the record does not evidence his efforts to disguise the connection between the car trading transactions and the mail fraud activity, the record does not support his money laundering convictions. The defendant, however, was convicted under 18 U.S.C. § 1956(a)(1)(A)(i), not 18 U.S.C. § 1956(a)(1)(B). While a conviction under § 1956(a)(1)(B) may require proof of concealment or disguise, that evidence is not necessary for a conviction under § 1956(a)(1)(A). *See* 18 U.S.C. §§ 1956(a)(1)(A), (B); *United States v. Jackson,* 935 F.2d 832, 842 (7th

Cir.1991) (concluding that a conviction under § 1956 requires proof of *either* intent to promote a continuing criminal enterprise *or* a design to conceal the source of the funds).

Instead, to prove a defendant guilty of violating § 1956(a)(1)(A)(i), the government must prove that the defendant: (1) conducted a financial transaction that involved the proceeds of unlawful activity; (2) knew the property involved was proceeds of unlawful activity; and (3) intended to promote that unlawful activity. 18 U.S.C. § 1956(a)(1)(A)(i).

■ The government has clearly adduced sufficient evidence from which a rational jury could hold defendant criminally liable. The record evidence established that defendant's applications for titles misrepresented the vehicles as new, low mileage vehicles. Defendant used the titles to deceive buyers and sell the vehicles at a price that reflected their description as low mileage vehicles instead of vehicles with higher mileages and received checks representing proceeds of this fraudulent activity. Given defendant's leadership role in the scheme, the jury could have rationally inferred that defendant knew that these checks were proceeds of that fraudulent activity. Finally, the evidence demonstrated that by cashing checks or depositing them into Auto World's bank account defendant intended to promote not only his prior unlawful activity, but also his ongoing and future unlawful activity. *See United States v. Manarite,* 44 F.3d 1407, 1416 (9th Cir.) (finding that since a chip-skimming scheme could not benefit its participants unless the chips were cashed, a rational jury could conclude that the chips were cashed with the intent to promote the chip-skimming scheme), *cert. denied,* —— U.S. ——, 115 S.Ct. 2610, 132 L.Ed.2d 854 (1995); *United States v. Cavalier,* 17 F.3d 90, 93 (5th Cir. 1994) (concluding that the transfer of a check furthered defendant's scheme to defraud, and, therefore, promoted the mail fraud); *United States v. Paramo,* 998 F.2d 1212, 1218 (3d Cir.1993) (holding that a rational jury could have concluded that cashing embezzled IRS checks was intended to promote the antecedent frauds), *cert. denied,* 510 U.S. 1121, 114 S.Ct. 1076, 127 L.Ed.2d 393 (1994). Accordingly, we conclude that the govern-

ment's failure to offer proof of an effort on the part of the defendant to disguise or conceal the nature of the funds is not fatal to defendant's money laundering convictions and that the record evidence supports defendant's money laundering convictions.

## 2. Constitutional Challenge to 18 U.S.C. § 1956

Defendant's next argument is that § 1956's failure to define "proceeds" renders that statute vague in violation of his due process rights under the Fifth and Fourteenth Amendments. " '[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, ——, 114 S.Ct. 1747, 1754, 128 L.Ed.2d 539 (1994) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). We conclude that, as applied in this case, the term proceeds is not unconstitutionally vague.

When the common meaning of a word provides both adequate notice of the conduct prohibited and standards for enforcement, a statute's failure to define a term will not render the statute unconstitutionally void for vagueness. *See United States v. Kaylor*, 877 F.2d 658, 661 (8th Cir.), *cert. denied*, 493 U.S. 871, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989). "Proceeds" is a commonly understood word in the English language. It includes "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1807 (1971). Because the term "proceeds" has a commonly accepted meaning, an ordinary person would be able to recognize whether the conduct in question is criminal. *See United States v. Jackson*, 983 F.2d 757, 765 (7th Cir.1993) (finding that the use of the word "proceeds" in the context of the money laundering statute is not ambiguous).

Further, despite defendant's suggestion, there is no doubt that the checks he received from the sales of the automobiles fall within the common understanding of "proceeds of specified unlawful activity." This interpretation of proceeds presents no threat of arbitrary or discriminatory enforcement. Therefore, because the term proceeds provides adequate notice of the conduct prohibited and the commonly understood meaning of that term does not subject the statute to arbitrary or discriminatory enforcement, we conclude that § 1956 is not unconstitutionally vague as applied to defendant's conduct.

## B. Admission of Deposition Testimony

Defendant also challenges the District Court's admission of transcripts containing deposition testimony that he allegedly gave in civil actions brought by the victims of his fraudulent scheme. The District Court rejected defendant's challenge to the transcripts' authenticity, finding that they appeared to be official transcripts, recorded in civil litigation, by established court reporter firms, and thus, were legitimate transcripts. Claiming that the government failed to establish the authenticity of copies of the transcripts which were uncertified and not signed, defendant argues that the District Court improperly admitted that evidence.

After the government introduced portions of these transcripts, however, the defendant himself introduced portions of those transcripts *other* than those offered by the government. Those portions introduced by the defendant were independent of those portions introduced by the government. That is, they did not refute or put into context the statements introduced by the government. Instead, they addressed questions unaddressed by those sections the government introduced at trial. The defendant's independent use of his own deposition testimony attested to the transcripts' authenticity, thereby removing any uncertainty regarding their admissibility on that ground. As such, the defendant's use of his own deposition testimony ratified the authenticity of the transcripts. This use was a waiver of his objection.[2]

---

**2.** We express no opinion as to whether a party's    use of *another's* statement can ratify the authen-

██ Defendant also objects to the admission of his statements contained in the deposition transcripts on the basis that they are inadmissible hearsay. We find that since these statements were defendant's own statements, offered against him, and related to the offenses for which he was convicted, they are admissible nonhearsay under Federal Rule of Evidence 801(d)(2). Therefore, we find no error in the District Court's admission of the deposition testimony.

## C. Sentencing Objections

### 1. Loss Estimate

██ Objecting to the District Court's calculation of his base offense level, defendant suggests that the District Court improperly calculated the loss attributable to his unlawful activity. Because this calculation of loss was inconsequential to the District Court's determination of an appropriate sentence, we find it unnecessary to address the merits of defendant's argument.

Adopting the presentence report, the District Court first separated the mail fraud counts into one group of offenses and the money laundering counts into another pursuant to USSG § 3D1.2(d). Offense levels for each group were calculated pursuant to USSG § 3D1.3. Based in part on the loss to the victims, which the District Court found to be $17,518, the adjusted offense level for defendant's mail fraud was nineteen. The adjusted offense level for the money laundering group, which was arrived at by adding the base offense level of twenty-three, a four point increase for defendant's leadership role in a scheme with at least five participants, and a two point increase for obstruction of justice, totaled twenty-nine; because the District Court valued the total loss to the victims as under $100,000, the adjusted offense level for these money laundering counts was unaffected by the District Court's calculation of the loss to the victims. *See* USSG § 2S1.1(b)(2).

Then, the District Court grouped the mail fraud counts and the money laundering counts together pursuant to USSG § 3D1.2(c). Under the grouping rules, the

offense guideline that produces the highest offense level dictates the sentencing range. USSG § 3D1.3(b). Here, the higher offense level was associated with the money laundering counts, not the mail fraud counts. Therefore, the offense level generated by the money laundering counts governed defendant's sentencing range. Because the loss to the victims, as calculated by the District Court, was not in an amount sufficient to increase the offense level generated by the money laundering counts, it is unnecessary for us to determine whether the District Court's calculation of loss was erroneous.

### 2. Leadership Role in a Scheme with at Least Five Participants

██ Defendant also contends that the District Court's conclusion that he was an organizer or leader of a criminal activity involving at least five participants was clearly erroneous such that the four point enhancement to his base offense level for the money laundering counts under USSG § 3B1.1(a) was also clearly erroneous. The District Court's finding that enhancement was warranted under USSG § 3B1.1(a) is subject to review for clear error. *See United States v. Ward,* 68 F.3d 146, 151 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1028, 134 L.Ed.2d 106 (1996).

██ Under the Sentencing Guidelines, the base offense level is increased by four points "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants." USSG § 3B1.1(a). The finding that an individual was a participant in the criminal activity must be supported by a preponderance of the evidence. *Ward,* 68 F.3d at 151.

The District Court found that six individuals—J.T. Haun, Stanford Sharp, Ray Lewis, David Lewis, Gary Burkeen, and Greg Goins—were criminally responsible for the commission of the offenses. Accordingly, the District Court increased defendant's money laundering offense level by four points. Defendant challenges the District Court's findings that Ray Lewis, David Lewis, and Greg

ticity of that evidence when that party previously objected to its authenticity.

Goins were responsible for the criminal activity.

 With respect to Ray Lewis, defendant argues that the District Court is precluded from finding him criminally responsible since he was acquitted. This argument, however, is without merit. Application note 1 of USSG § 3B1.1 provides that a "participant" in criminal activity is a "person who is criminally responsible for the commission of the offense, but need not have been convicted." Therefore, Ray Lewis' acquittal does not preclude the District Court from finding that the preponderance of the evidence established that he was a participant in defendant's criminal scheme. While the elements of a crime must be proved beyond a reasonable doubt for a conviction, the facts supporting a sentence enhancement need be supported by only a preponderance of the evidence. Thus, a finding of facts supporting a sentence enhancement is not inconsistent with an acquittal. Because Ray Lewis testified that he knew that the cars were reassembled and a victim of defendant's criminal scheme testified that Ray Lewis sold her a car without revealing its rebuilt status, we find no error in the District Court's finding that Ray Lewis was a participant in defendant's criminal activity.

Next, defendant challenges the District Court's finding that David Lewis was a participant in defendant's criminal scheme. Defendant suggests that because David Lewis was never criminally charged he could not have been a participant. Again, to be a participant in criminal activity for purposes of this sentencing guideline, the individual need not have been convicted, regardless of whether he was charged. *See* USSG § 3B1.1, comment. (n.1). Although at trial David Lewis denied his role in the criminal scheme, another victim of defendant's criminal scheme testified that David Lewis sold him a car without disclosing that it had been reassembled. Given David Lewis' criminal history of odometer tampering and mail fraud, the District Court did not clearly err when it credited the testimony of the victim and found that David Lewis was a participant in this criminal scheme.

Finally, defendant contests the District Court's finding that Greg Goins was also criminally responsible for the commission of defendant's offenses. Defendant bases his argument on the absence of Goins' testimony. However, based on Burkeen's testimony regarding Goins' request that he flip a title, the District Court did not err in concluding that Goins was a criminally responsible participant in defendant's illegal scheme.

Because the preponderance of the evidence indicated that defendant was the organizer or leader of criminal activity that involved five or more participants, including Ray Lewis, David Lewis, and Goins, we conclude that the District Court did not err when it increased defendant's offense level by four points.

### III. Conclusion

For the reasons stated, we AFFIRM the decision of the District Court.