**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rony Jamil LAHOUD Defendant–
Appellant.**

No. 00–4007.

United States Court of Appeals,
Sixth Circuit.

April 12, 2002.

Before KENNEDY, BOGGS and DAUGHTREY, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant Rony Lahoud appeals his sentence for distribution of heroin, arguing that the district court wrongly applied a leadership/organizational role enhancement in calculating his sentence. The defendant delivered 220 grams of heroin to undercover Drug Enforcement Agency ("DEA") Special Agent Randall Terry and an undercover Dayton, Ohio police officer. The defendant was subsequently arrested and charged, and entered a guilty plea to the charge of distributing in excess of 100 grams of heroin in violation of 21 U.S.C. Section 841(a)(1) and (b)(1). The district court applied U.S.S.G. § 3B1.1(c), which provides a two-level enhancement for a defendant who served as "an organizer, leader, manager, or supervisor in any criminal activity." Because the district court imposed the § 3B1.1 enhancement, the defendant could not utilize the "safety valve" provision of 18 U.S.C. § 3553(f) to avoid a mandatory minimum sentence. Accordingly, the district judge sentenced the defendant to sixty months in prison, five years of supervised release, and a one hundred dollar special assessment.

Defendant argues that he did not exercise the control over at least one other criminally responsible individual as required for a § 3B1.1 enhancement. He argues that the district court failed to make a specific finding of fact that the defendant exercised control, and that in any case there was insufficient evidence to conclude

that he was a supervisor or leader, rather than merely a partner of the other individuals involved in the heroin ring.

■ To be subject to the § 3B1.1 enhancement, the defendant must have played a leadership role in an organization with at least one other participant, and that participant must be someone criminally responsible for commission of the offense. U.S.S.G. § 3B1.1, comment.(n.2); *United States v. Gort–DiDonato*, 109 F.3d 318 (6th Cir.1997). It seems clear that the district court actually did make a factual finding that the defendant exerted control over at least one individual. Therefore, the district court's finding that the enhancement was warranted is reviewed under a clear error standard. *United States v. Haun*, 90 F.3d 1096, 1102 (6th Cir.1996). There is ample evidence to support the district court's conclusion that the defendant exercised leadership and supervisory responsibilities in an organization involving at least one other criminally responsible individual.

Lahoud suggests that Fadi and Robert Chehade, Lahoud's relatives, were his "partners", Br. at 5, rather than his subordinates. There is no merit in the defendant's contention that district court failed to make a specific finding of fact as to the leadership or supervisory control exercised by the defendant over the Chehades. The district court explicitly found that the "Chehade brothers looked to the defendant ... for guidance on such issues as price, quantity, the schedule of the deliveries, ... the question of the transferring of money, the place of the testing of the product, the availability of the product, and each and every aspect of the transaction in question." Joint Appendix ("J.A.") at 183. The court continued that the Chehades' role "did not involve decision making as to any of the above items." J.A. at 184. Moreover, the defendant was the

source of the heroin through a contact in Lebanon. J.A. at 184. In addition to directing the Chehades, the defendant also "either directly or through the Chehades arranged for the driver or drivers to bring the product to Dayton for delivery to [Special Agent] Terry." J.A. at 186.

■ Defendant's argument is that the court would have had to find Lahoud "directed" the Chehades to be subject to the § 3B1.1 enhancement. This seems to torture the language of § 3B.1 and its accompanying commentary. If the Chehades looked for guidance to the defendant, then the defendant was their leader, whether or not they acted at all times only under his direction. Subordinates can have some discretion without losing their status as subordinates.

■ Lahoud also maintains that even if the district court made a finding that he exercised control over the Chehades sufficient to evoke § 3B.1.1, its decision was not supported by sufficient evidence. The Commentary to the Sentencing Guidelines states that to determine whether a defendant has played a leadership role, the court should consider factors such as the "exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1. comment. (n.4). The record contains facts along a number of these lines that indicate Lahoud played a leadership role.

The defendant points to several recorded conversations between the Chehades and DEA Special Agent Terry in which the Chehades used the plural phrases "we" and "us" in response to Special Agent Terry's questions. According to

the defendant, only a partner would use such language. A subordinate would answer Special Agent Terry's questions by referring to Lahoud (in the third person) and the actions Lahoud would take or consider. This argument is unpersuasive. As the United States points out, the defendants do not speak perfect English. Their use of the collective pronoun does not provide clear and convincing evidence that Lahoud did not exercise authority. If anything, the use of the words "we" or "us" confirms the criminal conduct of the controlled individuals, one of the requirements for the § 3B1.1 enhancement.

While the Chehades had a financial stake in the outcome of the deal, there was sufficient evidence to justify the court's conclusion that Lahoud exercised primary leadership responsibility over the Chehades. In fact, the defendant told Special Agent Terry (through the DEA's confidential source, serving as translator) that his "partner" was in Lebanon. J.A. at 72, 74. Lahoud never referred to the Chehades as his partners. Special Agent Terry testified that when he inquired about one of the Chehades, the defendant stated that Fadi Chehade's "role" was "the translator for Mr. Lahoud. Or the interpreter." J.A. at 79. The district court credited this testimony and that credibility assessment should not be overturned. Moreover, the Chehades were not involved in several important negotiating meetings. In these meetings, Special Agent Terry negotiated with the defendant using his confidential source as a translator, outside of the presence of the Chehades. J.A. at 65. These negotiations concerned a number of features of the transaction, including price, and it was reasonable for the district court to conclude from the Chehades' absence from these negotiations that the Chehades and Lahoud were not equal partners.

Lahoud also points to a conversation in which Special Agent Terry (while speaking on the phone to Robert Chehade) asked for a meeting with Lahoud, and Lahoud said (to Robert Chehade), "tomorrow, tonight." Chehade then said that Terry could "give [Lahoud] a date. He can meet you whatever." J.A. 115. Apparently, the defendant takes the alleged inconsistency between Lahoud's statement and the message relayed by Robert Chehade to mean that the Chehades were free to contradict Lahoud's directions. First of all, Chehade's statement is not clearly inconsistent with Lahoud's. Neither was precise about when the meeting would occur. Given the limited English skills of the participants, the defense's strict "textual" analysis from which the defense concludes Chehade was empowered to overrule Lahoud-is inappropriate. Significantly, Chehade did not answer Special Agent Terry's question without consulting Lahoud. That the Chehades at other times answered Special Agent Terry's questions without passing them along to Lahoud does not prove that the judge's finding that the Lahoud occupied the leadership role was "clear error." Lahoud could have explained to the Chehades how he wanted to conduct the deal, and they could have been acting within the discretion he permitted them.

The district court considered audio and video tapes made by officers during their investigation, along with testimony offered at lengthy sentencing hearings, J.A. at 181–82, before reaching its factual determination that the defendant exercised a leadership role. Because the standard of review to district court determinations of the role played by a defendant is so deferential, and given the facts clearly on record in this case, we AFFIRM the sentencing calculation and the judgment of the district court.