**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alvarez Camila SANCHEZ,**
**Defendant–Appellant.**

No. 01–1742.

United States Court of Appeals,
Sixth Circuit.

Jan. 23, 2003.

Before BOGGS, SUHRHEINRICH, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Defendant, Alvarez Camila Sanchez, appeals from the judgment of sentence entered by the district court on May 17, 2001, sentencing Defendant to 151 months of imprisonment following Defendant's guilty plea conviction for conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, and distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). For the reasons set forth below, we AFFIRM Defendant's sentence.

## BACKGROUND

### Procedural History

Defendant is appealing the sentence she received on Counts One and Two of the fourth superseding indictment to which she pleaded guilty on the scheduled day of trial.[1] Count One charged Defendant with conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. Count Two charged Defendant with distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). As part of the guilty plea, Defendant stipulated to being held

responsible for at least 900 grams of methamphetamine on each of the counts of conviction.

Defendant was sentenced on May 17, 2001 to 151 months of imprisonment on each of the two counts of conviction, to run concurrently. The court found that the stipulated amount of methamphetamine resulted in a base offense level of thirty-four. The sentencing court added two levels for Defendant's role as an organizer, leader, manager or supervisor involving fewer than five participants pursuant to § 3B1.1(c) of the sentencing guidelines. The sentencing court reduced the offense level by two levels for Defendant's acceptance of responsibility as evidenced by her guilty plea.

An additional reduction of one level was made by the sentencing court in the form of a downward departure so that Defendant would not be prejudiced by her failure to timely respond to the government's proposed Rule 11 plea agreement, which would have recommended a full three-level reduction for acceptance of responsibility.

Finally, the sentencing court found that a prior marijuana conviction resulted in a criminal history category of II. Based upon an offense level of thirty-three and a criminal history category of II, Defendant was sentenced on May 17, 2001, to 151 months of imprisonment on each of the two counts, to run concurrently.

Defendant filed a timely notice of appeal on May 23, 2001.

### Facts

On December 28, 1999, postal inspectors in Grand Blanc, Michigan received a tele-

---

1. During June of 2000, the United States Supreme Court announced its landmark decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Because of the ramifications of that case, the government returned to the grand jury and secured a fourth superseding indictment that specially charged the amounts of methamphetamine that trigger both the ten-year mandatory minimum sentence and the life maximum sentence.

phone call from a postal inspector in Los Angeles, California advising that a suspicious express mail package was in route from Los Angeles, California to Richard Roberts at 7509 Embury Road, Grand Blanc, Michigan. An investigation was conducted by representatives of the Drug Enforcement Administration ("DEA") in California and Michigan. The package was discovered to contain a one pound package of methamphetamine. The recipient of the package, Richard Roberts, was prosecuted, and agreed to plead guilty and to cooperate with the DEA and the United States Postal Service ("USPS"). Roberts identified Defendant, Camilla Sanchez, as his source for the one pound package and ten-to-twenty prior packages, each containing approximately the same amount of methamphetamine. According to the presentence report, the intercepted package contained 94.6 grams of pure methamphetamine. This amount, 94.6 grams, added to ten additional packages containing approximately 90 grams of pure methamphetamine per package, results in a conservative total of 994.6 grams, to which Defendant stipulated her responsibility as part of her guilty plea.

Roberts engaged in recorded telephone calls with Defendant wherein the money he owed for the intercepted package and additional methamphetamine deliveries were discussed. Because Defendant speaks little English, she utilized her daughter, co-defendant Baudelia Valerie Sanchez, and other family members to act as her Spanish–English interpreters. The DEA also conducted three controlled deliveries of U.S. currency directly to Defendant in payment for the intercepted package. In addition, undercover agents, along with Roberts, arranged to meet with De-

fendant and Baudelia Valerie Sanchez in Ontario, California to negotiate the purchase of an additional two pounds of methamphetamine. That transaction never occurred. The investigation concluded with Defendant being charged with Count One, conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, and Count Two, distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1).[2]

During the pendency of the matter, Defendant's family attempted to retain counsel from California to substitute for Elias J. Escobedo, Jr., appointed defense counsel. On or about November 13, 2000, attorney Joseph E. Rowland sent, via facsimile, a motion to substitute as counsel to Escobedo. An order of substitution was also sent; however, the motion was never filed with the court and the order was never entered.

On December 11, 2000, Escobedo called the court's case manager to determine the status of the substitution order. Escobedo was advised by the court on December 29, 2000 that no substitution order was filed and he was still counsel of record. Thereafter, Escobedo met with Defendant two times at the Genesee County Jail in Flint, Michigan prior to attempting to execute a Rule 11 plea agreement previously tendered by the United States Attorney's Office.

During the guilty plea colloquy on January 16, 2001, the court permitted the Assistant United States Attorney to expand upon the factual basis being offered in support of Defendant's guilty plea. At that time, Defendant admitted, under oath, that during 1999, she agreed to sell methamphetamine to Roberts in Michigan on

---

**2.** Count Three, charging Defendant with attempted distribution and possession with intent to distribute more than 500 grams of methamphetamine, was dismissed upon the motion of the government.

ten or more occasions. Defendant also admitted that she used her daughter, co-defendant Baudelia Valerie Sanchez, as an English–Spanish interpreter to assist her in communications with non-Spanish speakers. Finally, Defendant admitted using co-defendant Donald Okeith Simmons to mail packages of methamphetamine, including the intercepted package to Roberts in Michigan.

For her managerial role, Defendant's base offense level was increased by two levels pursuant to USSG § 3B1.1(c). Defendant was found by the sentencing court to be subject to criminal history category II, based upon her felony conviction for possession of marijuana in 1995. The 1995 offense followed the execution of a search warrant at Defendant's home where two-to-three pounds of marijuana "packaged for sale," a triple-beam scale, a sawed-off rifle and a loaded Colt .45–caliber handgun were discovered and seized. Defendant's sentence, thirty-six months probation and ninety days jail time, resulted in two criminal history points. At sentencing, the court denied Defendant's request that the court depart downward because the 1995 conviction and the resulting criminal history category exaggerated and overstated the offense for which she was convicted.

The sentencing court invited argument by Escobedo relating to the actions of other attorneys who were seeking to become Defendant's retained counsel. Escobedo argued that he and Defendant's family were led to believe that attorney Joseph E. Rowland would be representing Defendant on this matter. Escobedo claimed that because he was misled, he did not pursue the possibility of a negotiated plea pursuant to the government's proposed Rule 11 plea agreement. As a result, the proposed Rule 11 plea agreement was not executed within the appropriate time limit.

To avoid penalizing Defendant for not negotiating a plea agreement prior to the trial date, January 16, 2001, the court granted a downward departure, reducing the offense level by one additional level, so that Defendant would be credited with the total three-level reduction for acceptance of responsibility to which she would have been entitled had she been able to consider and execute a Rule 11 plea agreement before the trial date.

All of these considerations resulted in a final determination by the sentencing court that the applicable offense level should be thirty-three and the criminal history category II. The court sentenced Defendant to 151 months of imprisonment on each of the two counts, to run concurrently.

## DISCUSSION

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

█ Defendant argues that because attorney Joseph E. Rowland advised her appointed counsel, Elias Escobedo, Jr., that he would be substituting as defense counsel, her appointed counsel did not pursue the possibility of a negotiated plea pursuant to the government's proposed Rule 11 plea agreement prior to the trial date. However, Rowland never filed the motion to substitute as defense counsel with the court. As a result of Rowland's failure to notify appointed counsel of his decision not to represent Defendant, Defendant pleaded guilty on the day of trial without the benefit of the Rule 11 plea agreement. Defendant argues that failure of Rowland to follow up on his "promise" to represent her constitutes ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant seeks re-sentencing to remedy the prejudice caused by the alleged ineffectiveness of Rowland.

We review claims of ineffective assistance of counsel *de novo*. *United States v. Jackson*, 181 F.3d 740, 744 (6th Cir.1999). However, findings of fact pertinent to the ineffective assistance of counsel inquiry are subject to a "clearly erroneous" standard of review. *Id.*

In *Strickland*, the United States Supreme Court established a two prong test to determine whether a defendant failed to receive his right to effective assistance of counsel. 466 U.S. at 687, 104 S.Ct. 2052. To satisfy the first prong, the defendant must show that trial counsel's performance was deficient. *Id.* at 688, 104 S.Ct. 2052. The Court explained that a counsel's performance is deficient if it fell below an objective standard of reasonableness under prevailing professional norms. *Id.* To satisfy the second prong, the defendant must show that trial counsel's deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. The Court explained that the defendant is prejudiced if there is a reasonable probability that but for the defense counsel's deficient performance, the result would have been different. *Id.* at 694, 104 S.Ct. 2052. Reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Id.* Both prongs must be met before relief may be granted. *United States v. Williams*, 176 F.3d 301, 312 (6th Cir.1999).

The government argues that even if Rowland's performance was deficient, Defendant was not prejudiced by such performance and, therefore, cannot meet the second prong of the *Strickland* test because Defendant ultimately received the same or lesser sentence than which would have resulted from the proposed Rule 11 plea agreement. We agree.

The agreement provided that Defendant would be sentenced to no more than the midpoint of the sentencing guideline range that the court found to be applicable.

Moreover, a specific provision in the agreement provided that "[t]he parties acknowledge that the court will determine the applicable sentencing factors at sentencing and the court's determination will affect the sentencing range under the sentencing guidelines." (J.A. at 46.) Thus, even though the worksheets that were attached to the proposed agreement suggested a guideline range of 135 to 168 months, the range would not have been binding on the court.

The proposed Rule 11 plea agreement also provided that Defendant would be eligible to receive a full three-level offense level reduction for acceptance of responsibility. At the sentencing hearing on May 17, 2001, the court reduced the offense level by two levels for Defendant's acceptance of responsibility evidenced by her guilty plea. The court also, in sympathy with the predicament caused by the uncertainty of the substitution of retained counsel, granted a downward departure that resulted in Defendant receiving the full three-level reduction for acceptance of responsibility to which she would have been entitled had she pleaded guilty pursuant to the proposed Rule 11 plea agreement. Moreover, although the agreement provided that Defendant would be sentenced to no more than the midpoint of the sentencing guideline range that the court found to be applicable, the court sentenced Defendant to 151 months, which is below the guideline range of 168 to 210 months the court found to be applicable.

Also at the sentencing hearing, the court noted that the amount of methamphetamine for which Defendant stipulated to be held responsible as part of her guilty plea was between 300 grams and 1 kilogram, which scored as a level thirty-four on the drug table. The proposed Rule 11 plea agreement, however, provided for Defendant to accept responsibility for a larg-

er amount, between 1 and 3 kilograms of methamphetamine, which would be a level thirty-six on the drug table. Thus, if Defendant were to have benefitted from the agreement, her sentencing range, based upon a offense level of thirty-five (including the one-level downward departure) and criminal history category of II, would have been 188 to 235 months. A sentence at the bottom of that range would be thirty-seven months greater than the 151–month sentence Defendant received.

Therefore, Defendant's claim for relief based upon ineffective assistance of counsel is not warranted since the ineffectiveness resulted in no prejudice to Defendant.

## II. MANAGERIAL OR SUPERVISORY ROLE

■ Defendant argues that the sentencing court committed clear error when classifying her as an organizer, leader, manager or supervisor, resulting in a two-level increase in the guideline scoring. In particular, Defendant argues that neither the presentence report nor the statements made by the government during sentencing established that she profited from her involvement, presented any danger to the public or was likely to recidivate, which must be shown prior to finding that she exercised a supervisory or managerial role in the criminal activity.

The government argues that the presentence report and Defendant's admissions during the guilty plea colloquy establish that she was the supplier of methamphetamine from Los Angeles, California to Flint, Michigan. We agree.

The United States Sentencing Guidelines § 3B1.1(c) provides for a two-level increase in the offense level if the defendant was an organizer, leader, manager or supervisor in any criminal activity involving less than five participants. USSG

§ 3B1.1(c). The background comment to USSG § 3B1.1(c) explains that:

This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate.

USSG § 3B1.1, comment. (backg'd.).

For a two-level increase under § 3B1.1(c) to apply, there must have been at least one other participant, aside from the defendant, who is criminally responsible for the commission of the offense, even if not convicted. *United States v. Haun,* 90 F.3d 1096, 1102 (6th Cir.1996).

Evidence on the record establishes that Defendant played an managerial or supervisory role in distributing methamphetamine from Los Angles, California to Flint, Michigan. First, Roberts indicated that Defendant was in charge of most of the criminal activity. In order to obtain methamphetamine, Roberts contacted Defendant over the telephone. Although co-defendant Baudelia Valerie Sanchez would act as a Spanish–English interpreter, Roberts stated that Baudelia Valerie Sanchez would stop the conversation from time to time to get directions from Defendant. Second, Defendant directed co-defendant Donald Okeith Simmons to mail packages of methamphetamine. Third, the three controlled deliveries of money were all made to Defendant. Fourth, although the transaction never occurred, undercover agents arranged to meet with Defendant to negotiate the purchase of an additional two pounds of methamphetamine. Finally, Defendant admitted that she distributed 994.6 grams of methamphetamine.

Defendant argues that she was being used as a "middleman" by a person who

was renting a room from her. Arguing she was not a kingpin is no defense to the finding that she was an organizer, leader, manager or supervisor in the criminal activity. *See United States v. Munoz,* 233 F.3d 410, 416 (6th Cir.2000) (holding that there was no clear error in the three-level sentencing increase on the basis that defendant was a manager or supervisor, despite that he acted only as middleman between the kingpin and informant, where defendant worked out the deal with the informant, made arrangements for the courier to deliver the drugs, and played a role in coordinating both the delivery of and payment for the amphetamine). Thus, the two-level increase under § 3B1.1(c) is fully supported by evidence on the record.

### III. CRIMINAL HISTORY

Defendant argues that the district court abused its discretion by denying her downward departure request on the ground that her 1995 conviction was a relevant precursor to the current methamphetamine offenses and an indication of her inclination to continue to commit controlled substances offenses. Defendant contends that the 1995 conviction exaggerated or over-represented the seriousness of her criminal history, which resulted in a category II classification inasmuch as the 1995 offense was not assaultive or violent in nature and was a victimless crime.

We do not reach the merits of Defendant's argument since we have no authority to review a district court's failure to grant a downward departure when the district court believed it had the authority to grant such a departure as a matter of law. *United States v. Cook,* 238 F.3d 786, 791 (6th Cir.2001). The district court in this case implicitly acknowledged that it had the authority to grant Defendant's downward departure request by denying the request. "[T]he district court need not

explicitly· state that it was aware of its discretionary power to depart downward; as long as the record makes clear such awareness...." *United States v. Strickland,* 144 F.3d 412, 418 (6th Cir.1998).

### CONCLUSION

For the foregoing reasons, Defendant's sentence is AFFIRMED.