NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0369n.06

No. 09-5562

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 16, 2010**
LEONARD GREEN, Clerk

ANDRE THOMAS,                                    )
                                                 )
     **Plaintiff-Appellant,**                     )        ON APPEAL FROM THE
                                                 )        UNITED STATES DISTRICT
v.                                               )        COURT FOR THE WESTERN
                                                 )        DISTRICT OF TENNESSEE
FRANCIS J. HARVEY, Secretary,                    )
U.S. Department of the Army,                      )
                                                 )        **O P I N I O N**
     **Defendant-Appellee.**                      )
                                                 )
_____          )

**Before:  BATCHELDER, Chief Circuit Judge, and MOORE and COLE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Andre Thomas, a black male who suffered

a knee injury while working for the U.S. Army Corps of Engineers ("Corps"), sued the Secretary of

the Army for disability and race discrimination based on various adverse employment actions.  The

district court granted summary judgment for the Secretary.  On appeal, instead of challenging the

merits of the district court's order, Thomas claims that the district court erroneously considered

untimely, inadmissible evidence.  Because we conclude that the district court did not err in its

evidentiary rulings, we **AFFIRM**.

**I.  BACKGROUND**

Andre Thomas first worked for the Corps for a four-year period beginning in 1991.  In June

1999, he returned to the Corps as a deck hand on a dredge.  That September, he entered the Upward

Mobility Program, a three-year program in which he would work for one year as a welding helper

at pay level WG-5, then work for two years as a welding worker at WG-8, and subsequently be eligible for promotion to full welder at WG-10.  In June 2000, he tore the medial meniscus in his left knee.  Following surgery, he returned to work in September 2000 with physician-imposed restrictions of limited walking, weight lifting of no more than ten to fifteen pounds, and no bending, stooping, or climbing.  He was placed on light duty in the Shops Unit office, handling clerical and support duties such as ordering supplies, picking up supplies and delivering them to the appropriate personnel, handling the mail, and answering phone calls.  Thomas retained the title of welding helper.  In this capacity, he rarely had the opportunity to work overtime, as he did before his injury.

In November 2000, Thomas was promoted to welding worker at WG-8, despite having been restricted to clerical work since returning to the job.  In March 2001, Thomas's doctor informed him that he had reached maximum medical improvement, that his lower left leg remained five percent impaired, and that he could work so long as he did not squat or crawl.  In June 2002, the doctor completed a Duty Status Report indicating that Thomas could not do any of the tasks expected of a welding worker and that he was prohibited from kneeling, squatting, or crawling.  In February 2003, the Corps issued Thomas a memorandum proposing to terminate his employment in light of his physical limitations and informing him of his right to respond to the letter orally or in writing.  Thomas did not respond.  In April 2003, the Corps issued Thomas another memorandum offering him the choice between termination and employment as an administrative assistant in its Regulatory Branch in Memphis, Tennessee, at $1.42 per hour less than he had been earning.  Thomas accepted the administrative position.

While working in the Shops Unit, before being transferred to the Regulatory Branch, Thomas applied to become a recipient of donated leave through the Corps's Voluntary Leave Transfer

Program ("VLTP"). Under the VLTP, employees could transfer accrued leave or sick days to fellow employees whose medical conditions left them with a zero leave balance. The Corps then asked Thomas to provide a doctor's statement detailing the medications he had been prescribed, the reason for the medications, the length of time he was expected to be on the medications, and any side effects. In response, Thomas submitted a doctor's note written on prescription paper indicating that he had been prescribed Ultram, a painkiller, and might need other medications in the future. The Corps informed Thomas that this documentation was inadequate to approve his participation in the VLTP. It further offered to obtain the medical information for him. Thomas took no steps to support his application with further documentation, however, and did not authorize the Corps to contact his doctor.

After joining the Regulatory Branch, Thomas verbally requested to work from home under the Corps's Telework Program on days on which his medication made it unsafe for him to drive to the office. His supervisors denied his request because his duties supported the work of other employees and could not be done remotely. Those duties included answering and directing phone calls, receiving and distributing mail, and finalizing correspondence.

Based on these events, Thomas raised complaints of disability and race discrimination with an Equal Employment Opportunity Counselor, who initiated mediation with his supervisors. Mediation failed, and Thomas filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Following a four-day hearing in June 2005, an Administrative Law Judge concluded in December 2005 that the Corps had not discriminated against Thomas.

Thomas then brought suit in federal district court against Francis J. Harvey in his official capacity as Secretary of the Army, alleging violations of Title VII of the Civil Rights Act of 1964,

42 U.S.C. §2000e, and the Rehabilitation Act, 29 U.S.C. § 794a; 29 C.F.R. § 1614.203. Thomas claimed that the Corps had discriminated against him based on race and disability in (1) forcing him from his position as a welding worker at pay level WG-8; (2) failing to promote him to full welder at WG-10; (3) denying him the opportunity to work overtime; (4) denying him participation in the VLTP; and (5) refusing to let him work from home through the Telework Program.

The Secretary initially filed a summary-judgment motion on April 30, 2008. Thomas filed a response in opposition on May 30, 2008, objecting to the Secretary's attached exhibits on authentication and hearsay grounds. On June 11, 2008, the Secretary moved for leave to make a substitute filing to cure the evidentiary defects. Over Thomas's opposition, the district court granted the motion for leave on July 9, 2008, but required the Secretary to file within two business days. The Secretary missed the deadline by four days, submitting his amended motion for summary judgment with supporting documents on July 15, 2008. Thomas then filed a second opposition on September 10, 2008, noting that the Secretary's filing was untimely and renewing his evidentiary objections. The record reflects no further discussion of the timeliness issue.

The district court issued an order conditionally granting summary judgment for the Secretary on March 12, 2009. Therein, the court dealt with a number of evidentiary objections, striking certain exhibits but deeming admissible transcripts from the EEOC hearing and a 2004 hearing before the Department of Defense Office of Complaint Investigations, conditional upon the Secretary certifying their authenticity within ten days of the order. With respect to the merits of the motion, the district court first found that the Secretary had admitted in his answer that Thomas had adequately exhausted his administrative remedies. The court then determined that Thomas could prove that he was "disabled" within the meaning of the Rehabilitation Act based on his walking limitations and could

4

identify a similarly situated disabled white employee who was treated more favorably. Nonetheless, the court held that Thomas could not prevail based on the Corps's failure to retain him as a welding worker because Thomas never requested a reasonable accommodation that would allow him to continue in that position. Since he could not work as a welder, the court held, he could not be promoted to WG-10, and overtime was not available to clerical workers as a matter of policy. The district court found that Thomas had failed to provide the Corps with the information required to qualify for the VLTP and, further, that he could not gainsay the Secretary's evidence that his participation in the Telework Program would impose an undue burden on the Regulatory Branch. Finally, the district court held that the Secretary had provided legitimate, nondiscriminatory reasons for all allegedly discriminatory acts, and that Thomas had failed to put forth any evidence of pretext. Five days after the district court's conditional order, the Secretary filed certified copies of the hearing transcripts. The district court then granted summary judgment in full and entered final judgment. Thomas timely appealed.

## II. ANALYSIS

Surprisingly, Thomas's appellate brief focuses not on the grounds for the district court's order, but rather on (only some of) the arguments made below by the Secretary. The result is that Thomas does not actually challenge the merits of the summary-judgment order. His brief, rather difficult to parse, contains the following arguments: (1) the Secretary has waived his right to argue that Thomas failed to exhaust his administrative remedies; (2) Thomas is in fact "disabled" within the meaning of the Rehabilitation Act; (3) Thomas can establish a prima facie case of racial discrimination; and (4) the Secretary's proffered nondiscriminatory reasons for adverse employment actions against Thomas are supported only by inadmissible evidence. The district court *agreed* with

5

Thomas's first three arguments but granted summary judgment to the Secretary on grounds not contested by Thomas on appeal. Thomas's fourth argument is the only one that, if meritorious, would undermine the district court's judgment. Accordingly, this case turns on the district court's evidentiary rulings.

Thomas's evidentiary challenge comes in two parts. First, he claims that the district court should have struck the Secretary's amended motion for summary judgment and accompanying exhibits as untimely. The Secretary filed his amended motion for summary judgment four days late, but the district court considered the motion and its supporting documents in resolving the case. "[I]t is within the discretion of the district courts whether to consider [evidence] submitted in an untimely fashion . . . ." *Hooks v. Hooks*, 771 F.2d 935, 946 (6th Cir. 1985); *see also Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1446 (6th Cir. 1993) (noting that the district court exercised its discretion to consider an affidavit filed thirty-four days late, and holding that the affidavit therefore could be considered on appeal). We review such decisions for abuse of discretion. *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 753 (6th Cir. 2003) (unpublished opinion). Given that the Secretary's filing was but four days late, that Thomas had ample opportunity to respond, and that Thomas in fact did file a second response in opposition two months later, he suffered no prejudice from the delay. Under these circumstances, we have no reason to believe that the district court abused its discretion.

Second, Thomas claims that all of the Secretary's exhibits in support of his motion should have been struck on lack-of-authentication and hearsay grounds. The district court credited Thomas's objections with regard to a copy of a note from his doctor and the Equal Employment Opportunity Counselor Report. It admitted and relied on four types of documentary evidence: (1)

transcripts of the 2005 EEOC proceedings; (2) transcripts of the 2004 Department of Defense Office of Complaint Investigations hearing; (3) a declaration from Barbara Cook, a human resources specialist for the Corps's office in Memphis, which attached certain correspondence and Thomas's Duty Status Report, retained by her as custodian of records; and (4) a declaration from Larry Watson, chief of the Regulatory Branch.[1]  Importantly, nowhere does Thomas seriously doubt the accuracy of any of these materials, at times even relying on them himself.  Instead, he insists on technical grounds that they were inadmissible.

We disagree.  The documents were sufficiently authenticated.  The district court highlighted the Secretary's initial failure to authenticate the transcript excerpts and made its order conditional on such authentication.  Thereafter, the Secretary timely filed certified copies of the full transcripts.  Moreover, the fact that Thomas himself attached portions of the EEOC hearing transcripts to his response in opposition "attested to the transcripts' authenticity, thereby removing any uncertainty regarding their admissibility on that ground." *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996).  The Cook and Watson declarations, made under penalty of perjury, fulfill the personal knowledge, admissibility, and competency requirements of Federal Rule of Civil Procedure 56(e) and otherwise are admissible in lieu of affidavits under 28 U.S.C. § 1746.  *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002).  Finally, the documents attached to the Cook declaration were authenticated by the Cook declaration itself under Federal Rules of Evidence 901(a) ("The requirement of authentication . . . is satisfied by evidence sufficient to support a finding that

_____

[1]Through counsel, Thomas refers in his brief to exhibits that are not in the record because the Secretary excluded them from the amended motion for summary judgment.  This appears to be the result of Thomas's copying and pasting whole sections of his first response in opposition into his appellate brief without modification.

the matter in question is what its proponent claims.") and 902(11) (for certified domestic records of regularly conducted activity).

The district court also properly concluded that the hearsay rules did not bar the Secretary's exhibits. Thomas's only explained hearsay objection is that the transcripts were inadmissible under Federal Rule of Evidence 804(b), which provides that former testimony is not excluded as hearsay "if the declarant is unavailable as a witness." Here, he points out, the Secretary never established that the witnesses who testified previously were now unavailable. This argument is too clever by half. Rule 804(b) is the same rule that controls the admissibility of depositions. District courts routinely consider properly authenticated deposition transcripts, and hearing transcripts of equal reliability should be treated in the same way. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009); *see also* Fed. R. Civ. P. 56(c)(2) (stating that summary judgment should be determined by reference to, inter alia, "the discovery and disclosure materials on file"); *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997) ("The proffered evidence need not be in admissible *form*, but its *content* must be admissible." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To the extent that Thomas intends to object to hearsay testimony *within* the hearing transcripts—that is, occasions when the witness relays statements from a third party—he has failed to pinpoint any such statements or to indicate how the district court relied on them.

We therefore conclude that the district court did not err in relying on the Secretary's documentary evidence in granting summary judgment to the Secretary.

## III. CONCLUSION

Because Thomas declined to appeal the merits of the district court's summary-judgment order, and because the district court did not err in considering the evidence submitted by the Secretary, we **AFFIRM** the district court's judgment.