NOT FOR FULL-TEXT PUBLICATION
File Name: 09a0422n.06

**FILED**
**Jun 15, 2009**
LEONARD GREEN, Clerk

NO. 05-6507

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

THOMAS H. CLARK,

        Defendant-Appellant.

_____ /

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

BEFORE: MARTIN, SUHRHEINRICH and GIBBONS, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.** Thomas Clark, a federal prisoner, appeals his convictions and sentence for various drug-trafficking offenses. Clark argues that: (1) the district court erred in denying his motion to suppress evidence seized pursuant to a search warrant; (2) the district court abused its discretion in disallowing a change of counsel; (3) the government engaged in prosecutorial misconduct by implying in closing argument that Clark needed to testify; (4) his sentence was procedurally unreasonable; and (5) the district court erred in enhancing the applicable sentencing range based on Clark's prior convictions. For the reasons that follow, we **AFFIRM**.

### I. Background

#### A. Facts

Government witnesses testified at Clark's trial and suppression hearing and revealed the following:

On September 24, 2001, Officer Shane George of the Shelbyville Police Department

purchased 0.4 grams of cocaine base ("crack") from Clark while working undercover in Shelbyville, Tennessee. On June 6, 2003, Michael "Butter" Wilson, a confidential informant ("CI"), purchased crack cocaine from Clark and Katherine "Kat" Haston inside a trailer rented by Reginald Brown on Lot 3 of King Arthur Trailer Park in Shelbyville, Tennessee.

On June 12, 2003, upon executing a search warrant at the trailer on Lot 3 of King Arthur Trailer Park, law enforcement agents arrested Clark and four others. The agents also seized two digital scales; three bags of cocaine from the kitchen table, weighing 19.2 grams, 6 grams, and 1.1 grams; a loaded 9 mm semi-automatic handgun, which was inside a kitchen cabinet; and three grams of marijuana from Clark's person. Agent Cordell Malone of the Bureau of Alcohol, Tobacco, and Firearms testified that the handgun was manufactured in California.

Reginald Brown, who had pleaded guilty to conspiring to distribute crack cocaine, testified that during the execution of the search warrant, he saw Clark remove a handgun from his waist and place it in a kitchen cabinet. He also saw Clark with the handgun on more than one occasion before that day. Brown testified that Clark served as a bodyguard to Katherine "Kat" Haston and that he saw Clark carrying crack cocaine for Haston on one or two occasions.

Karen Anderson testified that she obtained drugs at the trailer on Lot 3 many times, including one time when she purchased $20 of crack cocaine directly from Clark. She also testified that she saw Clark carrying the 9 mm handgun several different times. On the day the search warrant was executed, Anderson saw Clark carry the gun and drugs into the trailer.

Todd Russell testified that he regularly visited the trailer at Lot 3, owned by Reginald Brown, to buy or smoke crack. Russell admitted purchasing crack from Clark one time and purchasing crack from Haston 10 or 15 times. He also admitted seeing Clark with a handgun in his waistband a

"couple of times," including one time when Clark was delivering crack cocaine to Michael Wilson.

## B. Procedural History

On March 13, 2002, Clark was indicted for distributing cocaine base, based upon the sale to undercover officer Shane George. He agreed to pretrial diversion on October 4, 2002, but was subsequently arrested for additional drug offenses, which resulted in a multi-count, multi-defendant superceding indictment for conspiracy to distribute cocaine.

On May 11, 2004, a federal grand jury returned a second superceding indictment against Clark and three co-defendants: Katherine "Kat" Haston, Michael "Butter" Wilson, and Reginald Brown. In Counts 1, 2, and 5, respectively, Clark was charged with conspiracy to distribute and possess with the intent to distribute five or more grams of crack cocaine, in violation of 21 U.S.C. § 846; distribution of crack cocaine, in violation of 21 U.S.C. § 841; and possession with intent to distribute five or more grams of crack cocaine, also in violation of 21 U.S.C. § 841. In Count 6, Clark was charged with possession of a firearm in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924. In Count 7, Clark was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Clark was also charged, in Count 10, with marijuana possession, in violation of 21 U.S.C. § 844. Clark pleaded not guilty to all charges, so his case was set for trial.

On June 18, 2004, Clark filed a motion to suppress evidence seized from the trailer on the ground that the affidavit supporting the warrant contained false statements in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). Following an evidentiary hearing on February 18, 2005, the district

court denied Clark's motion to suppress.[1]

Clark also filed two motions seeking substitute counsel. On July 1, 2004, the district court dismissed the first motion after Clark conceded that his concerns regarding his counsel's representation had been resolved. On March 8, 2005, the district court also dismissed the second motion after holding a hearing on the motion.

Clark's trial began on April 12, 2005. Clark presented no evidence. On April 18, 2005, following his two-day jury trial, Clark was convicted on all charges. On September 19, 2005, Clark was sentenced to 420 months imprisonment, which consisted of concurrent terms of 360 months for Counts 1, 2, 5, 7, and 10, followed consecutively by a 60-month term for Count 6.

Clark timely filed a notice of appeal on September 29, 2005.

## II. Analysis

### A. Clark's Motion to Suppress

Clark first argues that the district court erred in denying his motion to suppress evidence seized from the trailer on Lot 3 of King Arthur Trailer Park because the affidavit filed in support of the search warrant contained false information, in violation of *Franks v. Delaware*, 438 U.S. 154 (1978), without which the warrant would never have issued. "On appellate review of the district court's ruling on a *Franks* challenge, we review de novo the district court's legal conclusions, and we review the district court's findings of fact for clear error. *United States v. Keszthelyi*, 308 F.3d 557, 566 (6th Cir. 2002). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

---

[1]The district court found that Clark did not make the requisite substantial preliminary showing to warrant a *Franks* hearing. The court nonetheless allowed Clark the opportunity to present proofs on his *Franks* motion in the evidentiary hearing.

conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). We view the evidence "in the light most likely to support the district court's decision." *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994) (citation omitted).

In *Franks*, the Supreme Court held that a search warrant must be voided if, after a hearing, the defendant establishes that (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Franks*, 438 U.S. at 155-56.

The affidavit at issue was prepared by Timothy Lane, director of the 17th Judicial District Drug Task Force, and was based upon the following facts: On June 6, 2003, a CI (later identified as Michael Wilson) made a controlled purchase of 6.9 grams of crack cocaine from Clark and co-defendant Haston inside the trailer on Lot 3 at King Arthur Trailer Park in Shelbyville, Tennessee. Wilson relayed all details of the transaction to Agent Timothy Miller. According to Wilson, Clark removed a bag containing crack from his pocket and gave it to Haston, who weighed out approximately seven grams on a digital scale. Haston and Wilson exchanged the crack for cash.

Using the information Wilson provided to Agent Miller, Affiant Lane prepared an affidavit in support of the search warrant. In his affidavit, Affiant Lane averred that Clark and Haston were distributing crack cocaine from the trailer at Lot 3 in King Arthur Trailer Park and that evidence, including crack cocaine, digital scales, and marked money, would be found "in possession of said person(s) or on said premises located in Bedford County, Tennessee." Affiant Lane provided detailed information about the June 6, 2003 controlled purchase and a description of the trailer. He also recounted two prior controlled purchases of crack cocaine from Haston. The first, on May 30,

2003, occurred at the trailer, and Clark was present outside when the CI arrived to make the purchase. The second occurred on June 5, 2003, at a Golden Gallon store. Affiant Lane also stated that the CI told officers that Haston lived in Nashville but regularly came to Shelbyville, usually with Clark, to sell crack at Lot 3. Affiant Lane stated that James Harden, an admitted crack addict, told Lane that Haston regularly sold crack out of a trailer in King Arthur Trailer Park in Shelbyville.

On June 9, 2003, based upon Lane's affidavit, a judge of the general sessions court for Bedford County, Tennessee granted a search warrant. The warrant was executed on June 12, 2003. Officers seized three bags of crack cocaine, totaling 26.3 grams, two digital scales from the kitchen table, a 9 mm semi-automatic pistol and ammunition from a kitchen cupboard, and three grams of marijuana found on Clark's person.

On June 18, 2004, Clark moved to suppress the evidence seized from the trailer based upon three allegedly false statements Affiant Lane made in his affidavit: (1) that Haston, Clark, and drug evidence were all located at the trailer at the time the affidavit was signed; (2) that the June 6, 2003 controlled buy occurred as Lane had described it; and (3) that Lane's assertions that the informant was reliable were false because the informant was paid cash for his help and was dealing drugs without Lane's knowledge.

On February 23, 2005, following an evidentiary hearing, the district court entered an order denying Clark's motion to suppress. The court found that Clark failed to demonstrate a legitimate expectation of privacy in the trailer and, thus, lacked standing to challenge the search. Even if Clark had standing, the district court held the claims of false statements in Lane's affidavit were meritless because Clark proffered no evidence indicating that the allegedly false statements were made knowingly and intentionally, or with reckless disregard for the truth.

On appeal, Clark challenges language in the affidavit indicating that both he and evidence of drugs were in the trailer on June 9, 2003. The affidavit states that Clark and Haston "are currently involved in the distribution of crack cocaine from Lot #3 at the King Arthur Trailer Park" and that "[evidence of drug sales] is now located and may be found in possession of said person(s) or on said premises located in Bedford County[,] Tennessee . . . ." Clark argues that Affiant Lane knew that Clark and Haston were not at the trailer as of the date of the affidavit, i.e., June 9, 2003, so this statement must be false.

We agree with the district court that Clark lacks standing to bring this claim. The trailer belonged to Reginald Brown, and Clark had no interest in it. Clark avers that he has occasionally stayed at the trailer as an overnight guest. As the district court noted, an overnight guest may have a legitimate expectation of privacy in a residence being searched. *Minnesota v. Carter*, 525 U.S. 83, 89-90 (1998). However, Clark fails to demonstrate an expectation of privacy in Brown's trailer. As Clark himself argues and Affiant Lane testified, Affiant Lane knew that Clark was not an overnight guest from June 6, 2003–when the controlled purchase was made–to June 12, 2003–when the search warrant was executed. Clark has presented no evidence demonstrating how often he was an overnight guest or when his last overnight stay occurred. Therefore, the district court properly found that Clark lacked standing to challenge the search.

Even if he had standing to bring the claim, Clark's argument would fail on the merits. Throughout the affidavit, Affiant Lane chronicled in great detail the transitory nature of Haston and Clark's drug distribution scheme. Affiant Lane explained that Haston lives in Nashville and regularly sets up shop at the trailer in Shelbyville to sell narcotics. The affidavit states that "[t]his is the residence that Haston and Clark have sold crack cocaine from," and further references two

earlier controlled buys of crack cocaine from the trailer. The affidavit also explains that evidence

of the drug scheme "may be found in possession of said person(s) *or* on said premises," which does

not support Clark's interpretation that Affiant Lane was intimating that the drugs and Clark were

necessarily on the premises at the moment Affiant Lane signed the affidavit. Therefore, reading the

sentence Clark complains of in context with the entire evidence in the affidavit, we hold that Affiant

Lane did not make a false statement knowingly and intentionally, or with reckless disregard for the

truth. Accordingly, this argument fails.

## B. Clark's Claim of Prosecutorial Misconduct

Clark next asserts that the prosecutor's closing remarks about Clark's failure to testify

constituted flagrant prosecutorial misconduct, denying him the right to a fair proceeding.

Specifically, Clark complains of the following portion of the prosecutor's closing arguments:

> Nonetheless, the defendant has admitted to Count 10, which was simple possession of the marijuana. He's never gotten up here and told you. He didn't tell you that he was guilty of the second count, which is the distribution of crack cocaine. He didn't tell you that he was guilty of even the simple possession of marijuana where it's found in his pocket–I don't know what his excuse for that is.

Whether the Government's closing argument constitutes prosecutorial misconduct is a mixed

question of fact and law that we review de novo. *United States v. Emuegbunam*, 268 F.3d 377, 403-

04 (6th Cir. 2001). In our review, we determine first whether the statements were improper. *United*

*States v. Krebs*, 788 F.2d 1166, 1177 (6th Cir. 1986). If they appear improper, we decide if they

were flagrant and warrant reversal. *United States v. Carroll*, 26 F.3d 1380, 1389 (6th Cir. 1994).

To determine flagrancy, we consider: 1) whether the statements tended to mislead the jury or

prejudice the defendant; 2) whether the statements were isolated or among a series of improper

statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the

total strength of the evidence against the accused. *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002).

It was improper for the prosecutor to comment on Clark's decision not to testify. *United States v. Drake*, 885 F.2d 323, 323 (6th Cir. 1989) (citing *Griffin v. California*, 380 U.S. 609 (1965)). However, the improper comments do not breach our threshold for flagrancy. While the prosecutor's comments may have been deliberate, they were isolated to this one instance and were not part of a series of improper statements. *See United States v. Galloway*, 316 F.3d 624, 633 (6th Cir. 2003) (improper comment during closing argument was not flagrant, *inter alia*, because the comment was isolated to the one instance). The comments also did not mislead the jury because, upon Clark's immediate objection, the district court instructed the jury to disregard the prosecutor's statements. A jury is presumed to follow the district court's curative instructions. *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991). Clark's attorney further repeated several times in his closing argument that Clark is presumed innocent until proven otherwise and has no obligation to testify. And the record reveals that evidence of guilt was overwhelming. *See Galloway*, 316 F.3d at 633 (holding that the defendant was not entitled to reversal based on prosecutor's improper remark during closing argument because, *inter alia*, the evidence against defendant was overwhelming). Clark, therefore, is not entitled to relief on this claim.

### C. Clark's Motions for New Counsel

Clark next argues that the district court erred in denying him new counsel after Clark and his attorney encountered a breakdown in communications. "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). We review the

district court's decision of whether to replace counsel for abuse of discretion. *United States v. Saldivar-Trujillo*, 380 F.3d 274, 277 (6th Cir. 2004). When reviewing the district court's denial of a motion for new counsel, we generally consider: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice. *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

On June 16, 2004, Clark filed a motion for new counsel. On July 1, 2004, at a motion hearing on an unrelated issue, the district court noted that Clark had sent two letters to the court expressing dissatisfaction with his attorney regarding several motions Clark wanted to file. The court inquired of Clark and his attorney if the issues had been resolved, and both answered that they had been. Accordingly, the district court did not substitute counsel.

On March 11, 2005, after receiving a second letter from Clark seeking a new attorney, the court held a hearing on the issue. At the hearing, Clark testified that his attorney failed to file motions for a bill of particulars and to dismiss. Clark's attorney, Dan Ripper, explained that he had considered the issues but found no factual basis to file the motions. Clark also stated that he had no way to contact Ripper and that Ripper did not visit often enough. Ripper explained that he did not accept collect calls but supplied postage-paid envelopes, four at a time, for Clark to use as needed. Ripper also reminded Clark of his visits to the prison. After considering the testimony, the district court concluded that Clark failed to show a valid reason to replace Ripper and ordered his motion denied.

We are satisfied that the district court did not abuse its discretion in denying Clark's motion

to replace counsel. First, the district court responded adequately to Clark's motions, allowing Clark to explain why he sought another attorney and giving Ripper the chance to respond. Next, after the first motion was filed, the parties conceded that they had resolved any miscommunication, which supports the court's finding that there was not a "total lack of communication" preventing an adequate defense. Similarly, at the March 11, 2005 hearing, where Ripper explained that Clark disagreed with his decision not to file motions for a bill of particulars and to dismiss, despite having no factual basis for the motions, the district court properly concluded that the miscommunication was not propagated by a disagreement over Clark's defense but by Clark's misunderstanding of the law. Finally, because Clark's disagreement with counsel stemmed from his desire to file additional motions, substituting counsel on that basis would have thwarted the prompt and efficient administration of justice where substitute counsel would have most likely agreed with present counsel that Clark's motions would be fruitless.

### D. Clark's Sentence

Clark next contends that his sentence is procedurally unreasonable because the district court did not consider, as part of the 18 U.S.C. § 3553(a) factors, Clark's misguided youth, lack of family life, mental problems, and his lesser role in the offense. Following *United States v. Booker*, 543 U.S. 220, 260-62 (2005), we review sentences for reasonableness. In reviewing a sentence for procedural reasonableness, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

-11-

We review only for plain error because Clark failed to object to his sentence after the district court asked for *Bostic* objections. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004) (holding that failure to object after the sentencing judge pronounces the sentence and asks for any objections will result in plain error review). To establish plain error, Clark must show "(1) error, (2) that was obvious or clear, (3) that affected [Clark's] substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotations and citations omitted). We find such error "[o]nly in exceptional circumstances . . . where the error is so plain that the trial judge was . . . derelict in countenancing it . . . ." *Id.* (internal quotation marks and citation omitted).

In *United States v. Rita*, 127 S. Ct. 2456, 2468 (2007), the Supreme Court explained that a sentencing court should "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." The sentencing court is not required to explicitly consider each of the § 3553(a) factors or to engage in "ritualistic incantation," but the record must "demonstrate[] that the sentencing court addressed the relevant factors in reaching its conclusion." *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007).

Here, we find that the district court properly addressed all of the relevant § 3553(a) factors. The district court explained that, in reaching the sentence, the court considered Clark's personal history as "a very young man" who has "engaged in a lot of criminal conduct in his very short life." *See* 18 U.S.C. § 3553(a)(1). The district court also explained that it considered the need "to protect the public," Clark's "personal characteristics," the "seriousness of the offense," "the need to afford adequate deterrence," and "the guidelines as well as the mandatory-minimum sentence that results

from the [conviction for possession of a firearm in furtherance of a drug trafficking offense pursuant to 18 U.S.C. § 924(c)]," which are all § 3553(a) considerations. *See id.* § 3553(a)(1)-(2). Indeed, the district court's consideration of the § 3553(a) factors is reflected in that court's decision to impose the lowest sentence recommended by the Guidelines and to further recommend that Clark receive substance abuse and mental health treatments. Accordingly, finding no clear error, we must reject Clark's claim.

### E. Clark's Sentence Enhancement

Clark's final argument is that the district court violated his Sixth Amendment right to a jury trial because it used evidence of prior convictions to enhance the applicable guidelines range without a jury finding that he had prior convictions. Clark concedes that, under the Supreme Court's holding in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), a prior conviction may be introduced at sentencing to enhance statutory punishment without offending a defendant's Fifth and Sixth Amendment rights to indictment, trial by jury, and proof beyond a reasonable doubt. 523 U.S. at 239-47. In his brief, however, Clark cites the concurring opinion by Justice Clarence Thomas in *Shepard v. United States*, 544 U.S. 13 (2005), in which Justice Thomas stated that a majority of justices of the Supreme Court are of the opinion that *Almendarez-Torres* was incorrectly decided. *Shepard*, 544 U.S. at 27-28 (Thomas, J., concurring).

Clark submits to this Court that, in light of *Shepard*, we should require a jury determination of qualifying prior convictions before enhancing his sentence. However, the Supreme Court has repeatedly stressed that "if the 'precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'"

-13-

*Tenet v. Doe*, 544 U.S. 1, 10-11 (2005) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). Accordingly, we will not take up here what the Supreme Court has asked us to leave in its hands.

Therefore, under *Almendarez-Torres* and Sixth Circuit precedent, the district court properly considered prior convictions during the sentencing proceedings, so this claim fails. *See Almendarez-Torres*, 523 U.S. at 239-47; *see also United States v. Jones*, 453 F.3d 777, 779 (6th Cir. 2006); *United States v. Hill*, 440 F.3d 292, 299 n.3 (6th Cir. 2006); *United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005).

### III. Conclusion

For the foregoing reasons, we **AFFIRM.**