**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0348n.06
Filed: June 18, 2008

No. 07-5382

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| JOSE SALAS, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**Before: DAUGHTREY and MOORE, Circuit Judges; DUGGAN,** [*] **District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant Jose Salas ("Salas") contests the district court's application of a three-level sentence enhancement for being a manager or supervisor of a criminal activity involving five or more people. Salas claims that the district court misapplied 2006 U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3B1.1(b) because there were fewer than five people involved in his criminal conduct. Salas makes this argument for the first time on appeal and has therefore forfeited it; accordingly, we review his claim only for plain error. We **AFFIRM** the district court's application of § 3B1.1(b) because Salas signed an Agreed Factual Basis as part of his plea agreement that stated that there were at least six participants involved in his criminal conduct. Therefore, we conclude that the district court did not commit plain error.

---

[*] The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

# I. BACKGROUND

This case involves a drug trafficking operation that ended with a drug bust on May 2, 2006. According to Jesse Ramzanali ("Ramzanali"), Salas's brother-in-law, on May 1, 2006, Salas asked Ramzanali for a favor in exchange for several thousand dollars. On that day, Salas and Ramzanali drove to East Tennessee, and once there, Ramzanali procured a hotel room at Salas's expense. On May 2, Salas informed Ramzanali that he wanted Ramzanali to pretend to be Salas. The plan was for two men from Texas to give Ramzanali a package of cocaine. After Ramzanali received the cocaine, buyers were to purchase the drugs, and then the original sellers would return to split the proceeds of the sale. However, things did not go according to plan; immediately after the buyers paid Ramzanali $84,000 for the drugs, an undercover agent for the Tennessee Bureau of Investigation arrested Ramzanali. Salas and his wife, Donna Chambers, were arrested in Texas on June 19, 2006.

On May 10, 2006, a grand jury indicted Salas and four other individuals in connection with the drug bust and the group's prior drug sales. On August 8, 2006, a grand jury handed down a superseding indictment consisting of the same charges but adding a sixth defendant to the case. The first count of the superseding indictment alleged that six individuals, including Salas, "did conspire, confederate and agree with each other . . . to distribute and to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)" between 2001 and May 2, 2006. Joint Appendix ("J.A.") at 36-37 (Superseding Indictment at 1-2). The superseding indictment also alleged that five individuals, including Salas, distributed five hundred grams or more of cocaine on May 2, 2006, and that Salas

2

and co-defendant Juan Jacinto aided and abetted in the possession with intent to distribute five hundred grams or more of cocaine between April 11, 2006 and May 2, 2006.

On December 4, 2006, Salas pleaded guilty to count one of the superseding indictment. In connection with his plea agreement, Salas also signed an Agreed Factual Basis, which stated in part:

> From at least 2001 until May 2, 2006, Jose Salas participated with Donna Jane Chambers, Juan Jacinto, Jorge Armondo Coreas, Francisco Dubany Zelaya, Jesse Cristobol Ramzanali and others in a conspiracy to distribute and possess with the intent to distribute over five kilograms of cocaine. Salas and Chambers were involved in the distribution of more than fifteen but not more than fifty kilograms of cocaine to Dewey Lynn Phillips of Newport, Tennessee in 2005.
> In furtherance of the conspiracy, Salas and Chambers arranged for the delivery of four kilograms of cocaine on May 2, 2006, in Sevier County, Tennessee, and four kilograms of cocaine were delivered by Ramzanali to a special agent of the Tennessee Bureau of Investigation acting in an undercover capacity, the cocaine having been delivered to Ramzanali by Coreas, Zelaya and others.

J.A. at 72-73 (Agreed Factual Basis 1-2). Salas, therefore, stated in a signed statement that at least six individuals were involved in the criminal conduct to which he pleaded guilty. Although the six individuals implicated in Salas's Agreed Factual Basis were also indicted in the superseding indictment, the government moved in February 2007 to dismiss the indictment of one of those individuals, Francisco Zelaya. The government requested the dismissal because it "believe[d] that it will be unlikely to meet its burden of proof beyond a reasonable doubt at this time." J.A. at 110 (Mot. to Dismiss Indictment at 1). The district court dismissed Zelaya's indictment without prejudice.

Prior to Salas's sentencing, the Probation Office issued a Presentence Investigation Report ("PSR") regarding Salas's recommended sentence. The PSR reiterated the language from the Agreed Factual Basis and stated that six individuals, including Salas, had conspired to possess with intent to distribute over five kilograms of cocaine between 2001 and May 2006. The PSR also included

details about the May 2, 2006 drug bust. The PSR calculated Salas's base offense level to be 34. In addition, the PSR recommended the contested three-level enhancement for Salas's role as a manager or supervisor under § 3B1.1(b),[1] which the government acknowledged it had never previously considered. The PSR also recommended a three-level reduction for acceptance of responsibility. Given a criminal history category of I, the PSR calculated Salas's Guidelines range to be a term of imprisonment between 151 and 188 months.

On March 1, 2007 prior to Salas's sentencing hearing, Salas filed a sentencing memorandum. The memorandum raised only one objection to Salas's PSR, that "Mr. Salas does not believe that he acted as a supervisor or leader in his dealing with codefendant Ramzanali," and the memorandum called the enhancement "a misapplication of the supervisor/leader role adjustment." J.A. at 117 (Sent. Mem.). The district court acknowledged this objection at Salas's sentencing hearing when it stated "[t]here is one objection filed by the defendant. The defendant objects to the 3 point enhancement for being a leader or supervisor . . . ." J.A. at 127 (Hr'g Tr. at 2:16-19). To support the application of the three-level enhancement, the government presented testimony from Ramzanali regarding Salas's role as a supervisor. For instance, Ramzanali testified that he never had contact with Salas's suppliers and operated under Salas's control in that respect. J.A. at 142-43 (Hr'g Tr., Ramzanali Test. at 17:16-18:6). On the basis of Ramzanali's testimony, the district court found "by a preponderance of the evidence that Mr. Salas arranged this deal and that Mr. Ramzanali acted under the direction of, under the management of, under the supervision of Mr. Salas in carrying out

_____

[1]Section 3B1.1 states: "Based on the defendant's role in the offense, increase the offense level as follows: . . . (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels."

the transaction." J.A. at 154-55 (Hr'g Tr. at 29:12-30:4). Thus, the district court agreed with the PSR's recommendation; the district court set Salas's offense level at 34 after applying the § 3B1.1(b) enhancement and the reduction for acceptance of responsibility.

Before sentencing Salas, the district court did two other things. First, the district court considered and granted the government's motion for a two-level downward departure for substantial assistance under U.S.S.G. § 5K1.1. This yielded an offense level of 32 and an advisory Guidelines range of 121 to 151 months of imprisonment. Second, the district court asked Salas whether there was anything other than the § 3B1.1(b) enhancement that Salas disagreed with, and Salas said there was not. Without further objections, the district court sentenced Salas to a term of imprisonment of 132 months.

The § 3B1.1(b) enhancement made Salas ineligible for the two-level safety-valve reduction he would have received under U.S.S.G. §§ 2D1.1(b)(9) and 5C1.2. Without the supervisor enhancement, starting with a base offense level of 34 and applying the three-level reduction for acceptance of responsibility, the two-level safety-valve reduction, and the two-level § 5K1.1 departure, Salas would have qualified for sentencing at level 27 with a Guidelines range of 70 to 87 months. In contrast, with the three-level § 3B1.1 enhancement included, the offense level 32 produced an advisory Guidelines range of 121 to 151 months.

On March 23, 2007, Salas filed a pro se notice of appeal. On March 26, 2007, Salas's newly appointed counsel also filed notice of appeal. Both were timely.

**II. ANALYSIS**

On appeal, Salas makes only one argument: "The District Court's assumption that the criminal activity involved five or more persons is clearly erroneous in light of the dismissal of the

5

indictment against Mr. Zelaya, one of the alleged criminally responsible participants, for insufficient evidence. The dismissal of the indictment left, at most, only four known criminally responsible participants." Appellant Br. at 11.

Generally, "[w]e review de novo the sentencing court's interpretation of the Sentencing Guidelines and statutes, and we review for clear error its factual findings." *United States v. Corrado*, 304 F.3d 593, 607 (6th Cir. 2002), *cert. denied*, 537 U.S. 1238 (2003). In the case of U.S.S.G. § 3B1.1, however, we have not resolved whether we should review a court's application of the section deferentially or de novo. *United States v. Lalonde*, 509 F.3d 750, 764 (6th Cir. 2007). Yet as we noted earlier, at sentencing Salas challenged only whether he was a supervisor, not the number of participants. Because Salas is advancing a new argument not raised at the district court, we will reverse Salas's sentence only if he can demonstrate plain error. *United States v. Olano*, 507 U.S. 725, 731-37 (1993).

We conclude that the district court did not commit error, let alone plain error, in determining that there were five or more participants in the criminal activity. We do not consider this to be a close question: Salas signed an Agreed Factual Basis that listed six individuals involved in the same criminal activity to which he pleaded guilty. Although Salas attempts to cast this case as one in which the sentencing judge used judge-found facts to enhance a sentence, the sentencing judge simply applied facts that Salas had admitted. It is not error for a court to sentence a defendant on the basis of facts to which the defendant himself admitted. *See United States v. Booker*, 543 U.S. 220, 244 (2005) (noting that facts admitted by the defendant may be used when sentencing a defendant beyond what the guilty plea itself would sustain); *United States v. Vonner*, 516 F.3d 382, 384-85 (6th Cir. 2008) (en banc) (stating that a judge may rely upon facts in a PSR to which a

6

defendant did not object because they are assumed to be admitted); *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006) (noting that during sentencing a district court can rely upon facts that the defendant admitted).

That the district court dismissed the indictment against Zelaya is of no import. Most significantly, the Guidelines state that "[a] 'participant' is a person who is criminally responsible for the commission of the offense, *but need not have been convicted*." U.S.S.G. § 3B1.1 cmt. 1 (emphasis added). Thus, when a defendant admits that an individual was a participant, it does not matter whether that individual is convicted, indicted, or neither. Because Salas admitted that Zelaya was a participant, Zelaya's status under the indictment is irrelevant. Furthermore, according to the Agreed Factual Basis, there were six, not five, participants; even if the dismissal of the criminal charges against Zelaya had some impact on calculation of the number of participants, there would still be five or more participants because the defendant himself counts toward the total number of participants. *See, e.g.*, *United States v. Bennett*, 291 F.3d 888, 897-98 (6th Cir. 2002).

### III. CONCLUSION

On appeal Salas raised only one argument: that there were fewer than five participants in the criminal activity to which he pleaded guilty. Salas made this argument for the first time on appeal, and because it was forfeited, we review only for plain error. Salas signed an Agreed Factual Basis that conclusively stated that there were five or more participants in the criminal activity. Thus, the district court did not plainly err either in holding that there were five or more participants or in applying a three-level enhancement pursuant to § 3B1.1(b). We therefore **AFFIRM** the district court's judgment.

7