NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0044n.06
Filed: January 21, 2009

No. 07-5601

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| JAVED ASHIQ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COLE and COOK, Circuit Judges; and EDMUNDS, District Judge.[*]

COOK, Circuit Judge. In exchange for guilty pleas on a count of conspiring to distribute Schedule II controlled substances, 21 U.S.C. §§ 841(a)(1), 846, and a related forfeiture count, *id.* § 853, the Government dismissed the remaining drug-offense counts against Javed Ashiq. At sentencing, the district court concluded that Ashiq acted as "an organizer or leader of a criminal activity that involved five or more participants," and accordingly enhanced Ashiq's offense level. U.S.S.G. § 3B1.1(a). Because the district court did not err in sentencing Ashiq, we affirm.

I.

---

[*]The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

In August 2006, Kentucky police stopped and searched a vehicle occupied by Ashiq and codefendant Kurt Francisco Kilgore, both Georgia residents. That search, coupled with a later search of a motel room shared by Ashiq, Ashiq's wife Tonya Lynn Groover, and Kilgore, resulted in the police discovering and seizing quantities of Oxycontin—a Schedule II controlled substance—consistent with distribution.

A grand jury returned a six-count indictment against Ashiq, Kilgore, Groover, and two other individuals allegedly tied to the drug conspiracy—Roger Dean Combs and Kelly Marie Green. After each codefendant signed a plea agreement, Ashiq, Kilgore, Combs, and Green pleaded guilty to conspiring to distribute Schedule II controlled substances. Ashiq and Kilgore also pleaded guilty to a related forfeiture count, and Groover pleaded guilty to a single possession charge. The Government dismissed the remaining charges against each defendant at sentencing.

Ashiq's plea agreement conceded that he supplied Oxycontin tablets for sale in Kentucky. According to both his police statement and plea agreement, he initially sold Oxycontin through two women later identified as Kate Rocker and Michelle Wooten. Ashiq received Oxycontin from a Georgia supplier known as "Birdman," and Rocker and Wooten would travel to Georgia to purchase the pills. After selling the drugs in Kentucky, Rocker and Wooten would return the proceeds to Ashiq. As a result of that relationship, Ashiq met Combs and Green, who sometimes bought Oxycontin from Rocker and Wooten for their own drug sales in Kentucky. According to Combs, at some point Ashiq's relationship with Rocker and Wooten ended, and Ashiq asked Combs to sell

Oxycontin for him. In order to facilitate the transactions with Combs and Green, Ashiq hired

Kilgore as a drug courier between Georgia and Kentucky, paying Kilgore for each trip. Combs and

Green would sell the pills and return the proceeds to Ashiq and Kilgore in Kentucky. After returning

to Georgia and giving Birdman his share, Ashiq would pay Kilgore half of the profits.

The Presentence Report ("PSR") recommended a four-level enhancement of Ashiq's sentence

because he acted as an organizer or leader of the conspiracy under § 3B1.1(a). Ashiq objected, and

the district court overruled Ashiq's objection at sentencing:

> [I]t is clear to the Court that based upon the facts set forth in the presentence report
> and the information available to the Court that Mr. Ashiq was in a position of being
> an organizer or leader with respect to Mr. Kilgore.
>
> The fact that he shared the profits, he split the profits equally, does not mean that he
> was an equal partner. It does appear that he directed the activities of Mr. Kilgore,
> specifically so that if—it appears to the Court if an arrest occurred, he would be able
> to distance himself from the activity. And so, therefore, he put Mr. Kilgore in a
> position of handling the narcotics when they were being distributed to Combs and
> Green and also recruiting the automobile that was used in the transaction, and this is
> sufficient for the Court to find that he was an organizer or leader of the activity.

The court calculated an adjusted offense level of 33, resulting in a Guidelines range of 135 to 168

months in prison. After downward adjustments for Ashiq's cooperation with the Government and

time served in custody, the court imposed a 100-month sentence. Ashiq timely appealed.

II.

Ashiq challenges the district court's decision to enhance his sentence by four levels under U.S.S.G. § 3B1.1(a). This court has yet to settle on what standard governs review of § 3B1.1 sentencing enhancements. As a general rule, we review a district court's factual findings for clear error and the court's legal conclusions de novo. *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008); *United States v. Moncivais*, 492 F.3d 652, 660 (6th Cir. 2007). But in *Buford v. United States*, 532 U.S. 59 (2001), the Supreme Court held that because of the "fact-bound nature" of applying an enhancement for prior felony convictions, U.S.S.G. §§ 4B1.1, 4B1.2, appellate courts should review a district court's decision to apply the enhancement "deferentially" rather than de novo. *Id.* at 64. Since then, this court often intimates that *Buford* implicates review of § 3B1.1 while refraining from deciding which standard applies. *United States v. Lalonde*, 509 F.3d 750, 764 (6th Cir. 2007); *Moncivais*, 492 F.3d at 660; *United States v. McDaniel*, 398 F.3d 540, 551 n.10 (6th Cir. 2005) (citing *United States v. Henley*, 360 F.3d 509, 516 (6th Cir. 2004)). Because the district court properly enhanced Ashiq's sentence under either standard, we need not resolve the question.

Although the standard of review may be unclear, we do have guidance on which factors a court weighs in assessing whether a defendant acted as an organizer or leader. The Guidelines counsel courts to examine "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 app. n.4. With respect to the § 3B1.1 enhancement, the district court made fact

findings that this panel will not disturb absent "the definite and firm conviction that a mistake has been made." *Jeross*, 521 F.3d at 569 (reviewing for clear error). Specifically, the court found that Ashiq required Kilgore to distribute the drugs, rent the vehicle, and rent the motel room in Kentucky "so that if . . . an arrest occurred, he would be able to distance himself from the activity." On appeal, Ashiq contends that the district court wrongly applied § 3B1.1(a) because the record does not reflect that he exercised control over other coconspirators; he argues instead that he maintained mutually beneficial, arms-length relationships.

Relying on *United States v. Swanberg*, 370 F.3d 622 (6th Cir. 2004), Ashiq contends that because he did not control what individuals did with the drugs he gave them, he did not exercise sufficient "control" to support a leader/organizer enhancement. *Id.* at 629. But *Swanberg* provides no support for this narrow definition of "control." The *Swanberg* panel vacated a § 3B1.1 enhancement by distinguishing between the situation where a defendant "exerted control over at least one individual within a criminal organization" and the situation where a defendant "merely exercised control over the property, assets or activities of the enterprise." *Id.* (quoting *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997)) (internal quotation marks omitted). The former warrants enhancement under § 3B1.1, while the latter does not. *Id.* In so holding, *Swanberg* merely reiterates the application notes to § 3B1.1, which require a defendant to be the organizer or leader "of one or more other participants." U.S.S.G. § 3B1.1 app. n.2.

With respect to Kilgore, although it is possible to debate the district court's finding that Ashiq placed Kilgore in the position of distributing the drugs, renting the vehicle, and renting the motel room in order to avoid criminal responsibility, Ashiq argues only that the court could read the facts differently, without offering any evidence or case law in support. Without more, we cannot conclude that the district court clearly erred. *See Jeross*, 521 F.3d at 569. Given that finding, it is plausible that Ashiq exercised a measure of control over at least one participant in the conspiracy, warranting the § 3B1.1(a) enhancement. *See Gort-DiDonato*, 109 F.3d at 321.

Moreover, the Government contends that the district court properly applied the § 3B1.1(a) enhancement because the record—including facts Ashiq conceded in his own plea agreement[1]—demonstrates that he actively recruited accomplices and maintained a central role in organizing the offense. *See* U.S.S.G. § 3B1.1 app. n.4. Concessions in a plea agreement are sufficient to support a § 3B1.1 enhancement. *See United States v. Erpenbeck*, 532 F.3d 423, 436 (6th Cir. 2008) (relying in part on the statements in a plea agreement to reject the defendant's argument that the § 3B1.1(a) enhancement did not apply because the conspiracy did not involve five persons); *United States v. Salas*, 281 F. App'x 496, 500 (6th Cir. 2008) ("It is not error for a court to sentence a defendant on the basis of facts to which the defendant himself admitted."); *see also United States v. Rivera-Rodriguez*, 489 F.3d 48, 59 (1st Cir. 2007) ("[A]lthough [plea agreement] stipulations are

---

[1]The plea agreement—prior to a recitation of admitted facts—provides that "the United States could prove the following facts that establish the elements of the offense beyond a reasonable doubt."

normally not binding on a district court, should the court decide to accept and act upon a stipulation for sentencing purposes, the parties will usually be firmly bound."); *United States v. Porretta*, 116 F.3d 296, 301 (7th Cir. 1997) ("Absent any compelling basis for disregarding the [plea agreement] admissions, they must stand."). The Government points out that Ashiq admitted in his plea agreement that both Kilgore and Combs told police Ashiq recruited them to sell Oxycontin. This involvement in recruiting others, along with the other evidence regarding Ashiq's role in Kilgore's involvement in the scheme, supports the district court's decision to enhance Ashiq's sentence. And, even if this panel concluded otherwise, Ashiq's role as the sole contact for the supply artery—Birdman—also points to his leadership or organization of the conspiracy. Whether this panel reviews the district court's decision to apply § 3B1.1(a) on these facts deferentially or de novo, the court did not err.

III.

Because the district court properly applied the four-level sentencing enhancement, we affirm.