NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0408n.06

Nos. 08-6064, 08-6065

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 12, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | **)** | |
| | **)** | |
| Plaintiff/Appellee, | **)** | ON APPEAL FROM THE UNITED |
| | **)** | STATES DISTRICT COURT FOR THE |
| v. | **)** | EASTERN DISTRICT OF KENTUCKY |
| | **)** | |
| HERMAN POLLY, | **)** | OPINION |
| | **)** | |
| Defendant/Appellant. | **)** | |
| | **)** | |

**Before:  BOGGS and GILMAN, Circuit Judges; and McCALLA, Chief District Judge.**[*]

**JON P. McCALLA, Chief District Judge.**  Defendant-appellant Herman Polly appeals the sixty (60) month sentence imposed by the District Court for the Eastern District of Kentucky after he pled guilty to conspiracy to manufacture 100 or more marijuana plants in violation of 21 U.S.C. § 846.  At sentencing, the district court applied a two-level enhancement for an aggravating role pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1(c).  Herman Polly appeals the amended judgment on the basis that the district court erroneously assessed the § 3B1.1(c) enhancement.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

_____

[*]The Honorable Jon Phipps McCalla, United States Chief District Judge for the Western District of Tennessee, sitting by designation.

**I.**

In the summer of 2006, Defendant Herman Polly ("Defendant") and his brother Roger Polly conspired to grow and produce marijuana in Letcher County, Kentucky. As part of the conspiracy, Defendant and Roger Polly hired Silas Lewis ("Lewis") to guard two of their marijuana plots.[1] On August 8, 2006, federal agents and the Kentucky State Police ("KSP") arrested Lewis while he was tending one of the plots of marijuana. Upon Lewis's arrest, the KSP reviewed video surveillance of the marijuana plots that had previously been established through a remote video camera. In the video surveillance, the KSP observed Defendant tending the marijuana plants along with Lewis. On August 10, 2006, federal agents and the KSP discovered the second plot of marijuana located off of Highway 160 near Linefork, Letcher County, Kentucky. The two plots of marijuana contained a total of 271 marijuana plants.

On May 17, 2007, a federal grand jury in the Eastern District of Kentucky returned a one-count indictment charging Defendant with conspiracy to manufacture 100 or more marijuana plants in violation of 21 U.S.C. § 846 ("Count One"). The indictment was superseded on August 16, 2007 by adding Roger Polly as a defendant to Count One. In addition, Defendant and Roger Polly were charged with manufacturing 100 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1) ("Count Two"), while Defendant alone was charged with possession of marijuana in violation of 21 U.S.C. § 844 ("Count Three"). On February 6, 2008, the indictment was superseded a second time. Specifically, Count Two was amended to charge both Defendant and Roger Polly with conspiracy to distribute 100 or more marijuana plants in violation of 21 U.S.C. § 846, and Count Three was

---

[1] It is undisputed that both Defendant and Roger Polly were present when Lewis was hired.

modified to charge Defendant and Roger Polly with conspiracy to distribute and possess with the intent to distribute oxycodone pills in violation of 21 U.S.C. § 846.[2]

On May 12, 2008, Defendant appeared with counsel before the district judge for re-arraignment. Under the terms of a written plea agreement, the district court allowed Defendant to plead guilty to Count One of the second superseding indictment. Defendant admitted that he conspired with his brother Roger Polly to grow and produce marijuana in Letcher County, Kentucky and that "271 total marijuana plants were reasonably foreseeable to the Defendant over the course of the conspiracy." The Government agreed that it would recommend dismissal of Counts Two and Three of the indictment at sentencing.

The plea agreement informed Defendant that the statutory punishment for Count One of the indictment was "imprisonment for not less than 5 years nor more than 40 years."[3] The agreement, however, did not include a specific sentence and stated that any sentencing recommendations would not be binding upon the court. Defendant acknowledged that his attorney fully explained the plea agreement to him, that he understood the terms of the plea agreement, and that his entry into the agreement was voluntary. After explaining to Defendant the rights he waived by pleading guilty, the district court found Defendant competent and capable of entering an informed plea and was satisfied that the plea was voluntary and had a factual basis.

---

[2] A fourth count was also added that charged Roger Polly with being a felon in possession of a firearm.

[3] *See* 21 U.S.C. 841(b)(1)(B)(vii) ("In the case of a violation of [21 U.S.C. § 841(a) or 21 U.S.C. § 846] involving . . . 100 or more marijuana plants regardless of weight . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years.").

The Presentence Report ("PSR") prepared by the U.S. Probation Office was disclosed to the district judge on July 10, 2008. Pursuant to U.S.S.G. § 2D1.1(c)(11), the PSR listed a base offense level of eighteen (18).[4] Defendant received a three (3) level reduction in offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Defendant's offense level was increased by two (2) levels under U.S.S.G. § 3B1.1(c) for serving "as a supervisor as to the criminal acts of Silas Lewis relative to the marijuana manufacture conduct." After applying these offense-level adjustments, the PSR calculated Defendant's total offense level to be seventeen (17). Defendant's criminal background did not result in the imposition of any criminal history points. He was therefore placed in criminal history category I. Based on a total offense level of seventeen (17) and criminal history category of I, the underlying Guideline range for imprisonment was twenty-four (24) to thirty (30) months. Pursuant to U.S.S.G. § 5G1.1(b), however, Defendant's two-level enhancement for a supervisory role in the conspiracy prevented Defendant from receiving the "safety valve" reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a).[5] The Guideline range therefore became the statutory minimum term of sixty (60) months.

---

[4] Defendant's relevant conduct in this case involved 271 marijuana plants weighing 27.1 kilograms. The offense level specified in the Drug Quantity Table under U.S.S.G. § 2D1.1 for violations of 21 U.S.C. § 846 involving 20 to 40 kilograms of marijuana sets a base offense level of 18.

[5] *See* 18 U.S.C. 3553(f)(4) ("[I]n the case of an offense under [21 U.S.C. § 846], the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act."); U.S.S.G. § 5C1.2(a)(4) (same).

Defendant filed one objection to the PSR, asserting that the determination that Defendant should be assessed an aggravating-role adjustment based on his supervision of Silas Lewis was improper. The U.S. Probation Officer acknowledged Defendant's objection, responding that "[a]s set forth in paragraphs #19 and #27 [of the PSR], when interviewed, Silas Lewis reported that he had been solicited by Roger Polly and Herman Polly to safeguard a quantity of marijuana plants . . . . Accordingly, the undersigned believes the U.S.S.G. § 3B1.1(c) assessment is proper in this case."

Defendant's Sentencing Memorandum addressed Defendant's objection to the PSR. Defendant admitted that he asked Lewis to safeguard the two plots of marijuana located in Letcher County, Kentucky. Defendant argued, however, that Defendant did not exercise greater control or decision-making authority than any of his co-conspirators. Thus, Defendant argued that he was not a supervisor of anyone involved in the criminal conspiracy and should receive the "safety valve" pursuant to U.S.S.G. § 5C1.2.

On August 14, 2008, Defendant and his counsel appeared at the sentencing hearing before the district judge. The district judge indicated that he had read the PSR and verified that Defendant had been advised by counsel of its contents. Defendant's attorney reargued the position taken in Defendant's Sentencing Memorandum that Defendant was not a supervisor of Lewis. Specifically, Defendant's counsel asserted that Defendant had very little decision-making authority and that Defendant's brother and co-conspirator Roger Polly was the individual who supervised the criminal conspiracy. Although the Government did not dispute that Roger Polly may have played the role of lead supervisor in the criminal conspiracy, counsel for the Government argued that Defendant

nonetheless exercised enough decision-making authority to warrant the two level enhancement under U.S.S.G. § 3B1.1(c).

After reviewing the PSR and Defendant's Sentencing Memorandum, and hearing oral arguments of both parties, the district court denied Defendant's objections to the two-level enhancement and allowed the two-level increase to stand. In support of its ruling, the district court focused on three portions of the record. First, the district court relied upon statements made by Silas Lewis in his plea agreement. In particular, Lewis stated that he was hired by "the members of the conspiracy to ensure the security of the [marijuana] plants." While Lewis never specifically stated that Defendant was the individual that made the determination to hire him, in light of Defendant's admission that he was present along with Roger Polly when Lewis was hired, the district court found Lewis's statements to indicate "kind of this joint co-direction by both" Defendant and Roger Polly in the decision to hire Lewis.

Second, the district court found persuasive the Government's argument that, although Defendant may not have been the lead organizer in the conspiracy, Defendant was nonetheless an "assistant organizer" who had more decision-making authority than Lewis. The district court focused on the instructions given to Lewis on how to respond in the event someone approached the plots of marijuana while Lewis was on guard. Specifically, Lewis told the authorities that he was instructed to "run to Herman's house" in the event of an emergency. There, Defendant would "presumably make a decision about what to do about that emergency." The district court stated that regardless of whether Defendant would himself make an immediate decision or whether Defendant would have coordinated with Roger Polly before taking action, this evidence "shows enough of a

factual connection to an organizing or managing or supervising role . . . for the two-level

enhancement."

Lastly, the district court found the factual circumstances as admitted by Defendant in his plea

agreement supported the two-level enhancement. The plea agreement entered into between the

Defendant and the Government states in pertinent part:

> 3. As to Count 1, the United States could prove the following facts that establish the
> essential elements of the offense beyond a reasonable doubt, and the Defendant
> admits these facts:
> (a)    In the summer of 2006, the Defendant conspired with Roger Polly to grow and
> produce over 100 marijuana plants. In furtherance of the conspiracy the Defendant
> and Roger Polly hired Silas Lewis to guard a plot of marijuana near the Defendant's
> home in Letcher County, in the Eastern District of Kentucky. . . .
> (c)    The Defendant and Roger Polly hired Silas Lewis to guard another plot
> of marijuana . . . .

Upon review of Defendant's plea agreement, the district court stated:

> [A]s I point out, in Mr. Herman Polly's plea agreement, he simply says, "[i]n furtherance of
> the conspiracy, [Defendant] and Roger Polly hired Silas Lewis." And I think for purposes
> of this sentencing, I have to take that simply at face value. Mr. Herman Polly, when I took
> his plea, agreed that by signing the plea agreement agreed that the Government would be able
> to prove that fact beyond a reasonable doubt. My standard here in terms of sentencing is by
> a preponderance of the evidence, and I understand that sometimes agreeing to those facts can
> have an unexpected consequence, and that's the case here in terms of the way the guideline
> calculation is made. But I think the best way to protect the integrity of this process in terms
> of the factual representations that defendants make in their plea agreements is to take them
> as they are given. And it simply says -- it doesn't, you know, talk about anything else except
> a fairly specific statement as it relates to both Roger and Herman hiring Silas.

Ultimately, the district court found that the evidence in the record provided a factual basis for the

determination that Defendant had an organizing, managing, or supervising role in the conspiracy to

support the assessment of the two-level aggravating-role enhancement. This timely appeal followed.

**II.**

**A.      Standard of Review**

As a general rule, we review a district court's factual findings for clear error and the district court's legal conclusions *de novo*. *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008); *United States v. Moncivais*, 492 F.3d 652, 660 (6th Cir. 2007). "A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (citations and internal quotation marks omitted).

This court, however, has yet to settle on what standard governs review of § 3B1.1 sentencing enhancements. *See United States v. Ashiq*, 307 F. App'x 913, 915 (6th Cir. 2009). In *Buford v. United States*, the Supreme Court held that because of the "fact-bound nature" of applying an enhancement for prior felony convictions under U.S.S.G. §§ 4B1.1 and 4B1.2, appellate courts should review a district court's decision to apply the enhancement deferentially rather than *de novo*. 532 U.S. 59, 64 (2001). Since then, this court "often intimates that *Buford* implicates review of § 3B1.1 while refraining from deciding which standard applies." *Ashiq*, 307 F. App'x at 915; *see also Lalonde*, 509 F.3d at 764; *Moncivais*, 492 F.3d at 660; *United States v. McDaniel*, 398 F.3d 540, 551 n.10 (6th Cir. 2005). Likewise, the instant case does not provide an occasion for resolving this question because we would affirm the enhancement of Defendant's Guidelines range under either standard of review.

**B.      The District Court did not Err by Concluding that Defendant was an Organizer or Leader**

Section 3B1.1(c) provides for a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c).

> In determining whether a defendant qualifies as a leader, organizer, manager, or supervisor, a district court should consider a number of factors including but not limited to "the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."

*Lalonde*, 509 F.3d at 765 (quoting U.S.S.G. § 3B1.1(c) cmt. n.4). This Court has stated that "a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1(c) to be warranted." *United States v. Gort-Didonato*, 109 F.3d 318, 321 (6th Cir. 1997). Similarly, "[m]erely playing an essential role in the offense is not the equivalent to exercising managerial control over other participants and/or the assets of a criminal enterprise." *Id.* (citing *United States v. Albers*, 93 F.3d 1469, 1487 (10th Cir. 1996)).

Defendant contends that the district court wrongfully applied § 3B1.1(c) because the record does not reflect that he exercised decision-making authority over Lewis; he argues instead that Roger Polly was the sole leader of the criminal conspiracy and that Defendant, along with Lewis, was merely a subordinate in Roger Polly's criminal scheme.[6] *See United States v. Lahoud*, 30 F. App'x 79, 81 (6th Cir. 2002) ("Subordinates can have some discretion without losing their status as subordinates."). In support of his contention, Defendant suggests that *United States v. Walker*, 160 F.3d 1078 (6th Cir. 1998), is analogous to the present case. In *Walker*, this court held the district

---

[6] Defendant does not dispute that more than one person may qualify as a leader or organizer in a criminal conspiracy.

court's finding that the defendant was an organizer, leader, manager, or supervisor was clearly

erroneous. *Id.* at 1092. In support of its holding, the *Walker* court stated:

> [T]he record reveals nothing that suggests [the defendant] was a leader. Not a single witness, at trial or at sentencing, discussed any organizational role for [the defendant], either administratively (by setting up deals or keeping track of people's salaries, as it were), or by actually directing the action. No one mentioned ever hearing [the defendant] directing anyone to do anything. The inference we draw from reading the testimony is that [the defendant] answered to [a co-conspirator], and we find nothing to suggest that anyone answered to [the defendant]."

*Id.* at 1091-92.

*Walker*, however, is factually distinguishable from the case at bar. The record in the instant

case reflects that in the event of an emergency, Lewis was directed to immediately report to

Defendant and look for guidance on how to respond. Thus, unlike *Walker*, there is evidence to

support the district court's finding that although Defendant may not have been the primary leader

in the conspiracy, Defendant was in a superior hierarchical position relative to Lewis, and thus not

a mere subordinate. *See Lahoud*, 30 F. App'x at 81 ("If the [defendant's co-conspirators] looked for

guidance to the defendant, then the defendant was their leader, whether or not they acted at all times

only under his direction.").

Moreover, this case is distinguishable from *Walker* because Defendant conceded in his own

plea agreement that he recruited Lewis as an accomplice and played a central role in organizing the

criminal conspiracy. We have held that "concessions in a plea agreement are sufficient to support

a § 3B1.1 enhancement." *Ashiq*, 307 F. App'x at 916 (finding § 3B1.1(c) enhancement proper when

the defendant admitted in his plea agreement that two co-conspirators told police that defendant

recruited them to sell Oxycontin); *see also United States v. Booker*, 543 U.S. 220, 244 (2005) (noting

that facts admitted by the defendant may be used when sentencing a defendant beyond what the guilty plea itself would sustain); *United States v. Salas*, 281 F. App'x 496, 500 (6th Cir. 2008) ("It is not error for a court to sentence a defendant on the basis of facts to which the defendant himself admitted."). Defendant admitted in his plea agreement that he and his brother Roger Polly conspired to grow and produce over 100 marijuana plants. Defendant also admitted in two separate paragraphs that he and his brother recruited Lewis to safeguard the plots of marijuana. Accordingly, Defendant's attempt to analogize this case to *Walker* is inapposite.[7]

Defendant argues that we should disregard the statements made by Defendant in his plea agreement and read the facts differently without offering any evidence that Roger Polly was the sole decision-maker in the criminal enterprise. Without more, we cannot conclude that the district court erred under either a *de novo* or deferential standard of review. We therefore conclude, based on Defendant's admissions in his plea agreement combined with the evidence that Lewis was directed to report to Defendant in the event of an emergency, that the district court properly applied the § 3B1.1(c) enhancement.

## III. CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is **AFFIRMED**.

---

[7] It is undisputed that Defendant and Roger Polly agreed to pay Lewis $100 a day to guard the marijuana plants. There is also evidence in the record that Lewis told authorities that Defendant and Roger Polly "conferred about selling the marijuana for $2,000 a pound." Under *de novo* review, this evidence further supports the conclusion that Defendant had a supervisory role in the conspiracy because he would have been entitled to a larger portion of the proceeds generated from the drug operation than Lewis. *See* U.S.S.G. § 3B1.1 cmt. n.4 ("Factors the court should consider include . . . the claimed right to a larger share of the fruits of the crime.").