RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0275p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRIAN KEITH WELLS, aka B. K. Wells,

*Defendant-Appellant*.

No. 21-5890

Appeal from the United States District Court for the Eastern District of Kentucky at Pikeville.
No. 7:20-cr-00006-1—Robert E. Wier, District Judge.

Decided and Filed: December 22, 2022

Before: SILER, GILMAN, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Stephenie N. Lape Wolfinbarger, STEPHENIE N. LAPE, PLLC, Cincinnati, Ohio, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

SILER, Circuit Judge. Defendant-Appellant Brian Keith Wells appeals his below-Guidelines sentence, challenging the district court's refusal to appoint substitute counsel, the application of a four-level role enhancement to his Guidelines range, and the substantive reasonableness of his sentence. For the following reasons, we AFFIRM.

# I.

In 2020, a federal grand jury charged Wells and co-defendant Christina L. Tidwell in a one-count indictment with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846, from about November 2018 and continuing to about February 2020.  The court appointed counsel to represent Wells on May 14, 2020, and Wells subsequently entered a plea of not guilty on May 19, 2020.

On July 20, 2020, Wells sent a letter to the court complaining about his court-appointed counsel.  His counsel moved to withdraw, and a magistrate judge granted the motion and appointed new counsel on July 28, 2020.  The court granted Wells's motions to continue the trial, and coupled with delays due to the COVID-19 pandemic, a trial was ultimately scheduled for May 5, 2021.

At a hearing before the court on April 26, 2021, Wells pleaded guilty to the one count charged in the indictment pursuant to a plea agreement.  Wells admitted several facts outlined in the Plea Agreement, including:

> Specifically, during this timeframe [around November 2018 to around February 2020], the Defendant was obtaining multiple ounces of methamphetamine from a source of supply based out of the Cincinnati, OH area, which he would then distribute to street-level drug dealers and end drug users in Pike County, KY and Mingo County, WV.  At times, the Defendant would use runners or mules to travel to Cincinnati, OH to obtain the meth and bring it back to him.  In addition, the codefendant, Christina Tidwell, assisted Wells in his distribution activities by selling to the Defendant's drug customers when he was not available.  Moreover, . . . Tidwell maintained and continued the Defendant's distribution activities on his behalf whenever he was incarcerated.

At the hearing, Wells admitted to the factual statements in the Plea Agreement and confirmed their accuracy.  Wells also assured the court that he had no complaints with his lawyer's performance and was not withholding any complaints against his counsel of which he was aware.  The court accepted Wells's entry of a guilty plea, and scheduled sentencing for August 18, 2021.

Two months later, on June 23, 2021, Wells sent another letter to the court, seeking to withdraw his guilty plea and requesting new counsel.  Wells asserted in his letter that he was "improperly misled by coun[s]el about the circumstances of the case," and he was provided

"false information" about his case, leading to his acceptance of the Plea Agreement. On July 9, 2021, the court conducted an ex parte *Iles*/*Benitez*[1] hearing to inquire about the relationship between Wells and his counsel.

The court conducted a searching inquiry into Wells's complaint and engaged with both Wells and his counsel several times to unearth the reasons behind Wells's letter. Wells's counsel indicated that he had not had any issues with Wells and thought they had an appropriate relationship, meeting several times either by phone or in person up to and following the plea hearing. However, Wells informed the court that he had initially wanted to go to trial "without any doubt," which he had told his counsel; but, he entered into the Plea Agreement "because [he] was under the assumption that [he] was being charged with another charge," and he did not find out until the plea hearing "that it was only an investigation and not a charge."

The court stated that it did not understand Wells's complaint as Wells pleaded guilty to the only count charged in the indictment. Counsel then explained that, following Wells's arrest, Wells had allegedly engaged in conduct that constituted material false statements to a federal officer. The government informed Wells's counsel that it was considering charging Wells as a result, but if he accepted the Plea Agreement in the underlying case, the government would not pursue this additional charge. The Plea Agreement reflected this compromise.

The court asked Wells again to explain his complaint. Wells remained adamant that he only pleaded guilty because he thought the government was adding an additional charge for the material false statement offense, and he did not understand that it was only an investigation until after the plea hearing. However, the court concluded that Wells received the deal for which he had bargained, and Wells confirmed with the court that he entered his guilty plea so he would avoid facing these additional charges.

Wells then argued that he was not guilty of the conspiracy and only entered into the Plea Agreement because it was in his "best interest." Wells maintained that he was just trying "to get the best deal [he] could get," and was just "trying to do the least time [he could] do."

---

[1]*Benitez v. United States*, 521 F.3d 625 (6th Cir. 2008); *United States v. Iles*, 906 F.2d 1122 (6th Cir. 1990).

The court asked Wells if he was able to talk to his counsel, whether he understood his counsel, and whether they were able to communicate with each other, all of which Wells confirmed. Wells's counsel then confirmed he was willing to continue the relationship. The court ultimately found that none of Wells's complaints formed a basis for substituting counsel, as Wells received "precisely what he expected" and his status was "precisely what he negotiated it to be post-plea." The court determined that it was "not going to do a counsel change without a basis showing the dissatisfaction. There is a public interest at play here. The matter comes up two months post-plea, a month and a half prior to sentencing. That's not a timely way to raise an issue of this type." For these reasons, the court denied Wells's request to replace his counsel but agreed to move the sentencing hearing to September so Wells and his counsel could confer on the issues that arose during the hearing.

At sentencing, the court first addressed the Presentence Investigation Report (PSI), including Wells's objection to the Probation Officer's recommendation to apply a four-level enhancement under USSG § 3B1.1(a) for Wells's alleged role as an organizer or leader of the conspiracy. The government relied on the facts in the PSI and the factual statements in Wells's Plea Agreement to support the application of the enhancement under § 3B1.1(a). Specifically, the government cited Wells's admissions in the Plea Agreement that "he would use runners or mules to travel to Cincinnati to obtain meth to bring back to him, which he distributed" and that "his codefendant, Christina Tidwell, assisted him in distribution activities by selling to [Wells's] customers when he was not available."

The court considered the factors listed in the commentary to § 3B1.1(a), including the exercise of decision-making authority, the degree of participation, recruitment, and financial stake. Based on these factors and the evidence presented before the court, specifically Wells's admissions in the Plea Agreement and the investigating officer's corroborating testimony, the court overruled Wells's objection and applied the four-level enhancement under § 3B1.1(a). The court determined that Wells had a total offense level of 33, with a criminal history category of V, resulting in a Guidelines range of 210 to 262 months with a mandatory minimum of 120 months.

Wells's counsel then indicated to the court that Wells had asked him not to argue anything on his behalf.  The court asked Wells why he took this position, and Wells responded, "I'm just ready to get this over with."  The court recommended that Wells allow his counsel to make an argument on his behalf, but Wells maintained his objection.  However, Wells's counsel asked the court to consider the written arguments he had submitted and to sentence Wells to 120 months—that is, the statutory minimum and 90 months below the bottom of Wells's Guidelines range.

The court thoroughly considered the factors under 18 U.S.C. § 3553(a) and various mitigating factors, as well as Wells's request for a downward variance to the mandatory minimum.  It agreed with the government and Wells that it was fair to vary 13 months below the Guidelines range for the period Wells was in custody following the issuance of the writ on the present federal charge until the time an unrelated state sentence was discharged; however, it found that a variance down to the statutory minimum was unwarranted.  It sentenced Wells to 197 months of imprisonment followed by five years of supervised release.

**II.**

Wells presents three challenges on appeal: the court 1) erred in denying his request to substitute counsel; 2) erred in applying the four-level role enhancement under § 3B1.1(a) to his Guidelines range; and 3) improperly balanced the § 3553(a) factors and imposed a substantively unreasonable sentence.  We reject each one of Wells's contentions in turn.

### A.  Wells's Motion to Substitute Counsel

Wells first claims that the court erred in denying his second request to substitute counsel. "[T]he Sixth Amendment is implicated where a criminal defendant seeks to change the status of his representation."  *Benitez*, 521 F.3d at 631 (emphasis omitted).  However, "the right to counsel of choice is not absolute.  An indigent defendant must show 'good cause' to warrant substitution of counsel."  *United States v. Chapman*, 796 F. App'x 873, 876 (6th Cir. 2019) (quoting *Iles*, 906 F.2d at 1130–31).

We review a district court's decision that an indigent defendant did not show good cause to substitute counsel for an abuse of discretion. *United States v. Marrero*, 651 F.3d 453, 464 (6th Cir. 2011). We consider the following four factors in determining whether the district court abused its discretion in denying such a request:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001); *see Marrero*, 651 F.3d at 464.

With respect to the timing of Wells's motion, "we have previously found motions for new counsel untimely when the defendant claims to have been unhappy with counsel all along but waits to file." *Chapman*, 796 F. App'x at 877 (citing *United States v. Jackson*, 662 F. App'x 416, 423 (6th Cir. 2016)); *see also United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (noting that the defendant "waited until just prior to trial to raise" his dissatisfaction with counsel). Here, Wells claimed that he initially became unhappy about his entry into the Plea Agreement following the plea hearing when he realized he was not being charged with any additional offense, which was the basis for his complaint against his attorney. However, Wells failed to submit his request for new counsel until two months after the plea hearing—and just weeks ahead of the scheduled sentencing. Moreover, the court expressed its concerns with the timelines of Wells's request. *See United States v. Gilliam*, 384 F. App'x 497, 498 (6th Cir. 2010); *cf. Chapman*, 796 F. App'x at 877 ("[T]he district court did not express any concerns about the timeliness of [the defendant's] motion, a consideration that has weighed in favor of finding a request timely." (citing *Marrero*, 651 F.3d at 465)). Thus, the timing factor weighs against Wells.

As to the adequacy of the court's inquiry into Wells's complaint, the transcript spanned over 20 pages, and the court heard from both Wells and his counsel several times. *See Chapman*, 796 F. App'x at 878 ("The district court's inquiry is adequate when it allows all of the interested parties to present their respective evidence and arguments." (quotation marks and citation

omitted)).  Ultimately, the court was able to unearth that Wells was really just "trying to do the least time [he could] do."

The third factor—whether the extent of the conflict between the attorney and the defendant was so great as to impede the communication between the parties—also weighs against Wells.  Wells's counsel outlined the history between him and Wells leading up to the hearing at issue and informed the court that there had not been any issues discussing Wells's charges or the proceedings during their several meetings.  Counsel confirmed it was a cordial and appropriate relationship.  The court also specifically asked Wells whether he was able to talk to his counsel, understand him, and communicate with him back and forth—all of which Wells confirmed was true.  Wells has not otherwise shown that the relationship was hindered due to the alleged conflict or that there was any lack of communication, *see id.* at 881–82, and he did not raise the issue again at the sentencing hearing.[2]

Finally, the court determined that there was "a public interest at play here."  This was Wells's second request for a third, new attorney, and it came just weeks before the sentencing hearing.   Moreover, his complaint appeared to be one of either misunderstanding the government's discretionary authority to charge additional offenses or buyer's remorse—he pleaded guilty to avoid additional charges for allegedly making material false statements to a law enforcement officer but then complained to the court that no further charges were being pursued, which was the exact benefit for which he bargained.  Replacing counsel at that stage due to either

---

[2]On appeal, as a final argument, Wells asserts that his adamance at sentencing to not have his counsel provide argument, coupled with his June 23, 2021 letter requesting new counsel, "should have triggered an additional *Iles*/*Benitez* inquiry" by the district court.  Wells relies on *Benitez*, where this court found that, even though the defendant did not indicate he wanted new counsel, he did indicate that he did not want his counsel to represent him any further at the sentencing hearing, which was sufficient to trigger an inquiry under the Sixth Amendment as to the source and nature of the defendant's dissatisfaction with his counsel.  521 F.3d at 631–36. However, unlike in that case where the defendant repeatedly indicated at the sentencing hearing that he did not want his counsel to represent him, in this case, Wells simply expressed his frustration with the proceedings generally, indicating he did not want his counsel to argue on his behalf because he was "just ready to get this over with." Wells then proceeded to refuse to offer anything further on his own behalf.  Accordingly, Wells's statements at the sentencing hearing were insufficient to put the court on notice that he remained dissatisfied with his counsel, as he did not "try to 'fire' his counsel, ask for new counsel, or suggest that he wished to conduct his own defense." *See Iles*, 906 F.2d at 1131.  In any event, even if the district court should have inquired further into the extent of any additional or continued conflict between Wells and his attorney, Wells's statements at the sentencing hearing were untimely and "changing counsel in the middle of [Wells's] sentencing hearing would have further delayed the proceedings, a reality at odds with the public's interest in the prompt administration of justice." *United States v. Jones*, Nos. 21-5493/5494, 2022 WL 2375730, at *4 (6th Cir. June 30, 2022).

Wells's misunderstanding or his remorse, rather than a disagreement with his counsel, likely "would have thwarted the prompt and efficient administration of justice," just weeks ahead of the scheduled sentencing. *United States v. Clark*, 328 F. App'x 992, 999 (6th Cir. 2009); *see United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004).

Because all of the *Mack* factors weigh against Wells, we find that the district court did not abuse its discretion in denying his motion to substitute counsel for lack of good cause.

**B. Application of the Four-Level Enhancement to Wells's Guidelines Range**

Wells next claims that the evidence presented before the court was insufficient to support the application of the four-level role enhancement to his Guidelines range under § 3B1.1(a). Our review of the district court's "legal conclusion that a person is an organizer or leader under Section 3B1.1 is . . . deferential." *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013). We review the district court's factual findings for clear error. *See United States v. Wright*, 747 F.3d 399, 412 (6th Cir. 2014).

The Sentencing Guidelines provide that a four-level enhancement is appropriate "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." § 3B1.1(a). We consider the several factors listed in the commentary to § 3B1.1 to determine whether the district court properly found that a defendant served as a leader or organizer of the criminal activity. § 3B1.1 cmt. n.4; *see United States v. Arrechavaleta*, 851 F. App'x 570, 573 (6th Cir. 2021) (quoting *United States v. Hernandez*, 227 F.3d 686, 699–700 (6th Cir. 2000)). Moreover, more than one individual may qualify as a leader or organizer of the conspiracy. *See* § 3B1.1 cmt. n.4; *Washington*, 715 F.3d at 984. "A defendant only needs to be a leader of 'one or more other participants' to qualify for the enhancement." *Washington*, 715 F.3d at 983 (quoting § 3B1.1 cmt. n.2).

The government must establish by a preponderance of the evidence that the leadership enhancement under § 3B1.1(a) applies. *United States v. Hills*, 27 F.4th 1155, 1198–99 (6th Cir. 2022). We have held that "[c]oncessions in a plea agreement are sufficient to support a § 3B1.1 enhancement." *United States v. Ashiq*, 307 F. App'x 913, 916 (6th Cir. 2009) (collecting cases).

Wells largely relies on his incarceration for all but one month of the alleged duration of the conspiracy to support his claim that the evidence failed to establish that he was an organizer or leader of the conspiracy. He also claims that the government failed to produce evidence of any discussion of the division of the profits or that he had ever paid anyone to aid him in the conspiracy. He further points to the several phone calls between him and his co-defendant, Tidwell, while he was in custody, arguing that none of the calls established that Wells was providing Tidwell with directions or was making any decisions in support of the conspiracy. He claims that the evidence tends to show that Tidwell was more of an equal or a partner in the activity, but Tidwell did not receive any role enhancement. In all, Wells contends that the evidence is similar to that produced in *United States v. Walker*, where we found that the evidence was insufficient to support the application of the role enhancement. 160 F.3d 1078, 1091–92 (6th Cir. 1998).

However, Wells's reliance on *Walker* is misplaced. In *Walker*, we found that no witness had ever indicated that the defendant engaged in any organizational role, "either administratively (by setting up deals or keeping track of people's salaries, as it were), or by actually directing the action." *Id.* at 1091. Furthermore, there was no evidence that the defendant "direct[ed] anyone to do anything." *Id.* at 1091–92. Conversely, in this case, relying on both the factual statements to which Wells admitted in the Plea Agreement and the investigating officer's testimony, the court found that Wells exercised decision-making authority over at least three of his coconspirators; recruited others through the use of runners and mules; had a financial incentive as "runners and mules are not really economic participants;" and participated in the planning and organizing of the conspiracy. Moreover, the court appropriately rejected Wells's argument that his incarceration disproved any alleged leadership or organizational role as he admitted in the Plea Agreement that he conspired with the others from 2018 to 2020. He also admitted in the Plea Agreement that Tidwell carried out his distribution activities when he was unavailable—and incarcerated.

The court's findings were not clearly erroneous based on the evidence presented before it, namely Wells's concessions in the Plea Agreement and the investigating officer's testimony at the sentencing hearing, and we defer to the court's legal conclusion that Wells served as a leader

or organizer of the conspiracy. *See United States v. Polly*, 385 F. App'x 454, 459–60 (6th Cir. 2010) (concluding similarly that the defendant's reliance on *Walker* was "inapposite" given the defendant's admissions in the plea agreement). Accordingly, we uphold the court's application of the four-level enhancement under § 3B1.1(a).

### C. Substantive Reasonableness of Wells's Below-Guidelines Sentence

Finally, Wells maintains that the court's sentence of 197 months of imprisonment—a sentence 13 months below his Guidelines range of 210 to 262 months—is substantively unreasonable. We review the substantive reasonableness of a district court's sentence for abuse of discretion. *United States v. Greco*, 734 F.3d 441, 444 (6th Cir. 2013). "A defendant challenging a below-guidelines sentence as substantively unreasonable bears an 'even more demanding' burden than does a defendant challenging a within-guidelines sentence." *United States v. Cornejo-Jimenez*, 563 F. App'x 480, 481 (6th Cir. 2014) (quoting *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008)).

Wells points to Tidwell's substantially lower sentence of 78 months to prove that his sentence is substantively unreasonable. He also maintains that, as to the § 3553(a) factors, "the district court focused almost entirely on the nature of the offense and placed very little weight on other mitigating factors."

Wells's disparity argument is unavailing. We have held that "[s]ubsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Even between co-defendants, § 3553(a)(6) "is not concerned with disparities between one individual's sentence and another individual's sentence." *Id.* Like the defendant in *Simmons*, there is no evidence in the record that Wells's sentence does not conform with national standards, and Wells fails to present any such evidence here. *See id.* at 626. In any event, as Wells himself acknowledges, Tidwell pleaded guilty to a lesser-included offense, and, unlike Wells, she did not receive an enhancement to her Guidelines range for her role in the conspiracy. *See Greco*, 734 F.3d at 450–51; *United States v. Wright*, 991 F.3d 717, 720 (6th Cir. 2021).

The court also carefully outlined the relevant § 3553(a) factors and their application in this matter.  Contrary to Wells's contention on appeal, the court weighed several mitigating factors, including Wells's employment and education history, a relatively clean period of criminal conduct from 2011 to 2016, and a background of minimal violence.  Despite Wells's refusal to argue on his own behalf, or allow his counsel to do so, the district court varied below the Guidelines range by 13 months.  However, it explicitly rejected Wells's request to vary 90 months below the minimum of his Guidelines range to the statutory minimum of 120 months given Wells's "criminal history category, the role in the case, the conduct on supervision, the quantity at issue and the felony trafficking recidivism."

Accordingly, Wells has failed to carry his heavy burden of establishing that his below-Guidelines sentence is substantively unreasonable.  We find that the court did not abuse its discretion in sentencing Wells to 197 months of imprisonment.

AFFIRMED.